James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
Kenneth M. Miller, Esq. (SBN 151874)
kmiller@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant
Mark Rettenmaier

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR 14-0188 CJC |
| Plaintiff | |
| v. | Testimony Required |
| MARK RETTENMAIER, | Current date: February 1, 2016<br>Time:          9:00 a.m.<br>Courtroom:   9B |
| Defendant | |

# NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING AND SUPPRESSION OF EVIDENCE PURSUANT TO *FRANKS v. DELAWARE* (EXHIBITS A – E FILED CONCURRENTLY UNDER SEAL)

# TABLE OF CONTENTS

Table of Contents ............................................................................ i

Table of Authorities ....................................................................... iii

Notice of Motion and Motion for Evidentiary Hearing and Suppression
Of Evidence Pursuant to *Franks v. Delaware* ........................................ 1

Memorandum of Points and Authorities ................................................ 3

I.      Introduction ................................................................... 3

II.     Statement of Facts ............................................................ 5

III.    Legal Standard for Obtaining Evidentiary Hearing on *Franks*
        Motion ........................................................................... 6

        A.      Standard for Evidentiary Hearing Re Material Omission that
                Alleged Child Porn Was Found in Unallocated Space .......... 7
        B.      Standard for Evidentiary Hearing for False Statement that
                Images Viewed Were Child Porn ................................. 7

IV.     The Intentional Failure to Disclose that the Alleged Child Porn Was
        Found On the Seagate Hard Drive's "Unallocated" Space Invalidates
        the Search Warrant ........................................................... 7

        A.      The Search Warrant Affidavit ................................... 8
        B.      Material Omissions ............................................. 9
                1. Unallocated Space ............................................ 9
                2. Someone Had Attempted to Delete the Child Porn ......... 11
                3. The Child Porn Could Only be Accessed with Special
                   Forensic Tools (that Dr. Rettenmaier Did Not Have) ....... 12
                4. No One Can Say How, or How Long Ago, the Child Porn
                   Was Placed on the Seagate Hard Drive ....................... 13
        C.      Dr. Rettenmaier is Entitled to an Evidentiary Hearing and
                Suppression of the Evidence and Fruits of the Evidence Seized
                From His Home ................................................. 13

V.   The Intentional False Statement that Agent Riley Viewed Child
     Porn on the Seagate Hard Drive Invalidates the Warrants for
     Both the Seagate Hard Drive and Dr. Rettenmaier's Home ..........   15

     A.   The Image Agent Riley Reviewed Does Not Meet the
          Definition Of Child Pornography .................................   15
          1. The image of "Jenny" ........................................   15
          2. Numerous images of child porn ...............................   17
     B.   *Franks* Requires An Evidentiary Hearing and Suppression ...   18

VI.  Conclusion ...................................................................   19

1

# TABLE OF AUTHORITIES

2

Cases:

3

4

*Barton v. State,* 648 S.E. 2d 660, 663 (Ga. Ct. App. 2007) ………………..………. 11

5

Franks v. Delaware, 438 U.S. 154 (1978) …………………………… 1, 2, 3, 6, 7, 15

6

*Illinois v. Gates,* 462 U.S. 213, 238 (1983) …………………………………….. 8, 14

7

8

*Payton v. New York,* 445 U.S. 573, 597 (1980) ……………………………………..   4

9

*People v. Kent,* 970 N.E. 2d 833, 841 (N.Y. 2012) ………………………………..   10

10

11

*State v. Barger,* 247 P.3d 309, 311 (Or. 2011) ……………………………………..   11

12

*United States v. Aviles*, 170 F.3d 863, 867 (9th Cir. 1999) ……………………   7, 14
216 F.3d 881 (9th Cir. 2000)

13

14

*United States v. Christakis,* 238 F.3d 1164, 1167 n.1 (9th Cir. 2001) ……………  8, 18

15

*United States v. DeLeon,* 979 F.2d 761, 764 (9th Cir. 1992) …………………….. 7, 14

16

17

*United States v. Dobbs,* 629 F.3d 1199, 1209 (10th Cir. 2011) …………………… 10

18

*United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011) ………………… 10, 12, 13

19

*United States v. Hall,* 113 F.3d 157, 159 (9th Cir. 1997) …………………………   7

20

21

*United States v. Hernandez,* 80 F.3d 1253, 1260 (9th Cir.1996) …………………  18

22

*United States v. Kuchinski,* 469 F.3d 853, 863 (9th Cir. 2006) ……………………  10

23

*United States v. Kyllo,* 37 F.3d 526, 529 (9th Cir. 1994) ……………………….. 7, 14

24

25

*United States v. Medina-Chavarin,* 147 F.3d 1161 (9th Cir.1998) ………………..  18

26

*United States v. Nichlos*, 2014 WL 4658951, at *9–*10
(N-M. Ct. Crim. App. 2014) ……………………………………………………… 10

27

28

*United States v. Stulock,* 308 F.3d 922, 925 (8th Cir. 2002) …………………………10

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING AND SUPPRESSION
OF EVIDENCE PURSUANT TO *FRANKS v. DELAWARE*

*Worden v. State,* 213 P.3d 144, 147–48 (Alaska Ct. App. 2009) ………………….. 11

Publications:

*Child Pornography, the Internet, and the Challenge of Updating Statutory Terms*, 122 Harv. L. Rev. 2206, 2211 (2009) ………………………10, 13

Statutes:

18 U.S.C. §2256(1) …………………………………………………………… 16, 17

18 U.S.C. §2256(2)(A) ………………………………………………………… 16, 17

18 U.S.C. §2256(2)(B) ………………………………………………………… 16

18 U.S.C. § 2256(8)(A) ………………………………………………………… 16

278393-1

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING AND SUPPRESSION
OF EVIDENCE PURSUANT TO *FRANKS v. DELAWARE*

James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
Kenneth M. Miller, Esq. (SBN 151874)
kmiller@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant
Mark Rettenmaier

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. SA CR 14-0188 CJC |
|---|---|
| Plaintiff | **NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING AND SUPPRESSION OF EVIDENCE PURSUANT TO *FRANKS v. DELAWARE* (EXHIBITS A – E FILED CONCURRENTLY UNDER SEAL)** |
| v. | |
| MARK RETTENMAIER, | |
| Defendant | |
| | Current date: February 1, 2016 |
| | Time:          9:00 a.m. |
| | Courtroom:   9B |

PLEASE TAKE NOTICE that on February 1, 2016 at 9:00 a.m., or as soon thereafter as counsel may be heard, Defendant Mark Rettenmaier, M.D., through his undersigned counsel of record, will and hereby does move this Honorable Court to order an evidentiary hearing and the suppression of evidence obtained during the search of his home, and all evidence that is the fruit of that search, pursuant to *Franks v. Delaware*, 438

1

U.S. 154 (1978).  Further, and also pursuant to *Franks,* Dr. Rettenmaier moves for an evidentiary hearing and the suppression of evidence obtained during the search of a Seagate 1 Terabyte internal hard drive, serial number 9TE243V2 (the "Seagate Hard Drive"), and all evidence that is the fruit of that search.

This motion is made on the grounds that the search warrant for Dr. Rettenmaier's home, and the separate search warrant for the Seagate Hard Drive, were obtained through the knowing and/or reckless inclusion of material false statements and/or the omission of material information and that when the omitted information is considered, and/or the false statements excluded, there is no probable cause to support either warrant; therefore, the searches violated Dr. Rettenmaier's rights under the Fourth and Fifth Amendments to the U.S. Constitution.  This motion is made pursuant to Federal Rules of Criminal Procedure 12 and 41.

The items Dr. Rettenmaier seeks to suppress include all evidence obtained in the search of his home, all statements made during the execution of the warrant, and all evidence (including statements) that are the fruit of the illegal search of Dr. Rettenmaier's home.  Further, Dr. Rettenmaier seeks to suppress all evidence obtained in the search of the Seagate Hard Drive, and all evidence that is the fruit of that illegal search.

This motion is based on the attached Memorandum of Points and Authorities, the attached declarations, the concurrently filed under seal exhibits (A – E), the Court's files and records in this case, and any additional evidence and argument that may be presented to the Court at or before the hearing on this motion.

Dated: October 30, 2015          BIENERT, MILLER & KATZMAN, PLC


By: _____
                James D. Riddet

              Attorneys for Defendant Mark Rettenmaier

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Mark A. Rettenmaier, M.D. is a physician and surgeon specializing in Gynecologic Oncology since his Fellowship with the University of California, Irvine in 1981–1982. He is also an Adjunct Clinical Professor at the Keck School of Medicine, University of Southern California, and an Associate Clinical Professor at the University of California, Los Angeles.  Dr. Rettenmaier brings this motion because both the search of his home in Laguna Hills, California, and the search of the Seagate 1 Terabyte internal hard drive, serial number 9TE243V2 (the "Seagate Hard Drive") that he delivered to Best Buy, violated his rights under the Fourth and Fifth Amendments to the United States Constitution. Both warrants were obtained through the deliberate omission of important information *and* deliberate false statements.  Accordingly, Dr. Rettenmaier moves for an evidentiary hearing to prove his claims under *Franks v. Delaware,* 438 U.S. 154 (1978).

The initial challenge to the search warrant for Dr. Rettenmaier's home presents two simple questions.  First, when seeking a search warrant for a person's home, based on the discovery of alleged child pornography ("alleged child porn") on the "unallocated space" of that person's computer hard drive, *must law enforcement inform the issuing Magistrate that the alleged child porn was discovered on unallocated space*?  Because unallocated space is hidden and inaccessible to the person, and therefore directly impacts the question of whether that person *knowingly* possessed the child porn, it needs to be disclosed to the Magistrate.

Second, *does the existence of child porn on the unallocated space of a hard drive that is taken to a computer repair store—without anything more—provide probable cause to search that user's home and all of his computers for alleged child porn*?  Here, the warrant affidavit was premised on the conclusion that Dr. Rettenmaier had a sexual interest in children.  But since there was no probable cause to believe the alleged child porn on the unallocated space of Dr. Rettenmaier's computer was knowingly possessed, there was no probable cause to believe that he had a sexual interest in children.

Therefore, there was no probable cause to believe there would be more child porn at Dr. Rettenmaier's home.  In short, the affidavit used to obtain the search warrant for Dr. Rettenmaier's home omitted information that would have gutted its argument for probable cause.  Thus, Dr. Rettenmaier is entitled to an evidentiary hearing on his *Franks* Motion to prove that the agent who swore out the affidavit to obtain the search warrant for his home knowingly omitted the following key facts:

- The alleged child porn was found on the Seagate Hard Drive's unallocated space and there was no alleged child porn on the Seagate Hard Drive's allocated space;

- Alleged child porn on unallocated space cannot be viewed without special forensic tools that the Geek Squad and the FBI's computer experts possess, but which Dr. Rettenmaier likely did not;

- It is impossible to know how, why or when the alleged child porn got onto the Seagate Hard Drive's unallocated space;

- It is possible the alleged child porn got onto the Seagate Hard Drive without Dr. Rettenmaier's knowledge, against his will or before he even took possession of the Seagate Hard Drive; and,

- The alleged child porn was deleted from the Seagate Hard Drive's allocated space, but it is impossible to know how, why or when that happened, or who did it.

Ultimately, Dr. Rettenmaier is entitled to the suppression of all evidence that is the fruit of the illegally obtained search warrant for his home.  This *Franks* violation also applies to the warrant for the Seagate Hard Drive itself, because the fact that the alleged child porn was found on unallocated space, and the ramifications of that fact, were knowingly omitted from the affidavit for that search warrant, too.  But the constitutional violation stands in especially stark relief as it relates to the search of Dr. Rettenmaier's home, because homes enjoy special protection under the Fourth Amendment. *See, e.g., Payton v. New York,* 445 U.S. 573, 597 (1980).

Additionally, the search warrants for both the Seagate Hard Drive and Dr. Rettenmaier's home were obtained through the deliberate false statement that the single

photograph the agent reviewed was actually "child pornography." However, the image the agent actually reviewed on the Seagate Hard Drive does not meet the definition of child pornography. While the agent also claims to have reviewed other images as well, her description of those images do not meet the definition of child pornography. (Additionally, while she now claims to have reviewed these additional images, she has made contradictory statements on the issue and has admitted she has no independent evidence that she reviewed those additional images.) So Dr. Rettenmaier is entitled to an evidentiary hearing so the Court can see for itself that the image the agent reviewed is not pornographic, and that her claim to having reviewed other images is a lie and/or does not establish probable cause.[1]

## II.   STATEMENT OF FACTS

On or about November 20, 2011, Dr. Rettenmaier took the Seagate Hard Drive to Best Buy for repair. Sometime after the delivery to Best Buy, the Seagate Hard Drive was shipped to a location in Kentucky where it was searched by a Best Buy/Geek Squad employee. The employee observed something that he believed might be illegal and informed a supervisor who contacted the FBI. On January 6, 2012, Special Agent Tracey Riley went to the Best Buy location and observed item(s) on a screen of the computer. Agent Riley then seized the computer and took it back to an FBI office. Following the seizure of that computer by the FBI, Special Agent Cynthia Kayle prepared two search warrant affidavits, one for a warrant to search the Seagate Hard Drive and one for a warrant to search the premises located at                          , California, where Dr. Rettenmaier and his family resided. Both affidavits were submitted to a Magistrate at the same time, and on February 11, 2012, Magistrate Judge Marc L.

---

[1] Dr. Rettenmaier's iPhone was seized during the execution of the search warrant and must therefore be suppressed for the *Franks* violations. Nonetheless, Dr. Rettenmaier has concurrently filed separate suppression motions for: the search and seizure of his iPhone also during the search of his home because it was outside the scope of the warrant; and, the "Geek Squad's" initial search of the Seagate Hard Drive, because they were acting as government agents.[5]

Goldman issued both warrants.  FBI agents executed the two warrants, searching the

Seagate Hard Drive and the premises at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ California.

     The probable cause portions of both affidavits are virtually identical.  The affidavits state that: (1) an employee of Best Buy/Geek Squad advised the FBI that the Seagate computer contained "what appeared to be child pornography"; (2) Agent Riley observed on the computer "what she believed to be child pornography"  in that it "contained possible child pornography" which included one image of a "fully nude, white, prepubescent female on her hands and knees on a bed, with a brown choker type collar around her neck"; and, (3) the screen also contained images of the genitals of young girls.  The affidavits also state that the agent did not scroll down the screen to see other photos.  The affidavits then contains allegations about Dr. Rettenmaier and where he lives including the fact that also residing at the residence was Dr. Rettenmaier's wife and three sons.  There are additional allegations of the affiant's experience and alleged expertise in child pornography cases.  Finally, the affidavits assert that because people with a sexual interest in children tend to keep lots of child pornography, there is probable cause to believe child pornography will be found both on the Seagate Hard Drive and in Dr. Rettenmaier's home.  *See generally* Affidavit In Support Of Search Warrant for ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Rettenmaier's home), filed under seal Exhibit A, and Affidavit In Support Of Search Warrant for Seagate Hard Drive, filed under seal Exhibit B.

     The image that is referred to in both affidavits has been viewed by a computer expert retained by the defense and by counsel for Dr. Rettenmaier, and it is clear that this image does not meet the definition of child pornography contained in the relevant statutes.  Counsel for Dr. Rettenmaier requests this Court order the government to produce this image at the hearing on this matter.

6

III.   **LEGAL STANDARD FOR OBTAINING EVIDENTIARY HEARING ON**
**_FRANKS_ MOTION**

A search warrant obtained with an intentionally or recklessly false affidavit "must be voided and the fruits of the search excluded to the same extent as if probable cause were lacking." *United States v. Hall,* 113 F.3d 157, 159 (9th Cir. 1997) (quoting *Franks v. Delaware,* 438 U.S. 154, 156 (1978)). Moreover, "misstatements or omissions of government officials which are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official at fault is not the affiant." *United States v. DeLeon,* 979 F.2d 761, 764 (9th Cir. 1992). *See also United States v. Aviles*, 170 F.3d 863, 867 (9th Cir. 1999), *amended on other grounds*, 216 F.3d 881 (9th Cir. 2000) ("An agent in Agent Tse's position has an obligation to disclose to a fellow task force member all information material to such an application.").

### A.   Standard for Evidentiary Hearing Re Material Omission that Alleged Child Porn Was Found in Unallocated Space

*Franks* requires suppression when the search warrant affidavit contains material omissions, as well as affirmative misrepresentations. *United States v. DeLeon,* 979 F.2d 761, 763 (9th Cir. 1992). In order to obtain an evidentiary hearing on his claim the Magistrate was misled by the affiant's failure to disclose that the alleged child porn was found on unallocated space, Dr. Rettenmaier "must first make a substantial preliminary showing that the affidavit contained a misleading omission and that the omission resulted from a deliberate or reckless disregard of the truth. Second, he must demonstrate that had there been no omission, the affidavit would have been insufficient to establish probable cause." *United States v. Kyllo,* 37 F.3d 526, 529 (9th Cir. 1994). *See also DeLeon,* 979 F.2d at 764 ("Where, as here, a warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included."). Probable cause is lacking when, in light of all the evidence set forth in the affidavit (and all evidence that should have been set forth in the affidavit),

7

1  there is no "fair probability that contraband or evidence of a crime will be found in a
2  particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

3  **B.    Standard for Evidentiary Hearing for False Statement that Images**
4         **Viewed Were Child Porn**

5         In order to obtain an evidentiary hearing on his claim that the Magistrate was
6  misled by the affiant's false statement that the image the agent reviewed was actually
7  child pornography, Dr. Rettenmaier must make a preliminary showing that the statement
8  in the affidavit was false.  This Court must then decide if there was probable cause for the
9  warrant after excluding that false statement.  *United States v. Christakis,* 238 F.3d 1164,
10  1167 n.1 (9th Cir. 2001).

11  **IV.   THE INTENTIONAL FAILURE TO DISCLOSE THAT THE ALLEGED**
12         **CHILD PORN WAS FOUND ON THE SEAGATE HARD DRIVE'S**
13         **"UNALLOCATED SPACE" INVALIDATES THE SEARCH WARRANT**

14         Dr. Rettenmaier took the Seagate Hard Drive to his local Best Buy for some repairs
15  by the Geek Squad.  The hard drive was apparently shipped to Best Buy's facility in
16  Kentucky where the Geek Squad does all of its data recovery.  On January 5, 2012,
17  someone from the Geek Squad apparently called the FBI and reported that the Seagate
18  Hard Drive contained suspected child porn.  On January 6, 2012, Agent Riley viewed
19  "images of what appeared to be child pornography," and confiscated the Seagate Hard
20  Drive.  Based upon information provided by Agent Riley, Agent Kayle signed an affidavit
21  in support of a successful application for a warrant to search Dr. Rettenmaier's home—
22  including all of his computers—for child porn.

23  **A.    The Search Warrant Affidavit**

24  Essentially, Agent Kayle's Affidavits provide:

25  •  Agent Kayle has a lot of experience investigating crimes against children.

26  •  On January 6, 2012, Agent "Riley personally visited the Kentucky Best
27     Buy/Geek Squad facility and observed images of what appeared to be child
28     pornography." Exhibit A at ¶ 7; Exhibit B at ¶ 7.

8

- The customer who requested the repair of the computer containing child porn was Mark Rettenmaier and he resides at the "subject premises," ███████████ ██████████████ Exhibit A at ¶¶ 8-9. *See also* Exhibit B at ¶¶ 8-9.

- Agent Kayle knows that "individuals who have a sexual interest in children or images of children may keep copies of their collection on additional computers and digital storage devices." Exhibit A at ¶ 10; Exhibit B at ¶ 10.

- "The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography." Exhibit A at ¶ 15; Exhibit B at ¶ 15.

- "[T]here are certain characteristics common to individuals with a sexual interest in children and traffic in child pornography," including that they: (1) receive sexual gratification from reviewing images of child porn; (2) collect child porn and review it for sexual gratification; (3) maintain "hard copies" of the child porn in their home; (4) keep their collections "close by . . . to enable the individual to view the collection"; (5) "rarely destroy correspondence from other child pornography distributors/collectors"; and, (6) "prefer not to be without their child pornography for any prolonged time period." Exhibit A at ¶¶ 24a-g; Exhibit B at ¶¶ 24a-g.

In short, the Kayle Affidavits assert that there was probable cause to search Dr. Rettenmaier's entire home (and the Seagate Hard Drive) because "individuals with a sexual interest in children" usually keep their child porn at home. Her conclusion that Dr. Rettenmaier had a "sexual interest in children" assumes that the alleged child porn on the Seagate Hard Drive delivered to Best Buy was knowingly possessed (because the unknowing possession of child porn would not provide cause to believe the possessor has a sexual interest in children).

**B.    Material Omissions**

The Kayle Affidavits fail to mention that the child porn was: (1) on the Seagate Hard Drive's unallocated space; (2) it got into the unallocated space when someone tried

to delete it; (3) no one could access the child porn without sophisticated forensic tools (so Dr. Rettenmaier could *not* access the material); and, (4) no one can say how, or how long ago, the child porn got onto the Seagate Hard Drive.

### 1. Unallocated Space

The alleged child porn was stored on the unallocated space of Dr. Rettenmaier's computer. Declaration of Tami Loehrs at ¶8, attached. According to the Ninth Circuit:

> Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder that cannot be seen or accessed by the user without the use of forensic software. Such space is available to be written over to store new information. Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive. All other attributes—including when the file was created, accessed, or deleted by the user—cannot be recovered.

*United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011). In fact, it is possible that this material could have been saved to unallocated space before Dr. Rettenmaier ever owned the computer or it could have been installed without his knowledge or against his will. *See* Loehrs Decl. at ¶12. *See also Child Pornography, the Internet, and the Challenge of Updating Statutory Terms*, 122 Harv. L. Rev. 2206, 2211 (2009) (describing many ways child porn can end up on computer without users knowledge or against user's will).

A defendant must know of child porn to possess it. *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006)); *United States v. Dobbs,* 629 F.3d 1199, 1209 (10th Cir. 2011) (same). The mere existence of child porn on a computer's unallocated space—without anything more—is insufficient to establish knowing possession. *Flyer*, 633 F.3d at 918–20. Therefore, it is insufficient to convict as a matter of law. *See United States v. Nichlos*, 2014 WL 4658951, at *9–*10 (N-M. Ct. Crim. App. 2014) (existence of child porn on unallocated space insufficient to prove possession). *Cf. United States v. Stulock,* 308 F.3d 922, 925 (8th Cir. 2002) (district court acquitted defendant on charges of possession of images stored in cache because no evidence defendant purposely saved or downloaded images); *People v. Kent,* 970 N.E. 2d 833, 841 (N.Y. 2012) (insufficient

1   evidence of guilt where no evidence suggested defendant knew of images stored in
2   cache); *State v. Barger,* 247 P.3d 309, 311 (Or. 2011) (same); *Worden v. State,* 213 P.3d
3   144, 147–48 (Alaska Ct. App. 2009) (same); *Barton v. State,* 648 S.E. 2d 660, 663 (Ga.
4   Ct. App. 2007) (same).

5       Clearly, Agent Kayle knew what unallocated space was when she drafted the
6   affidavits because they both describe it. According to the affidavits: By using "forensic
7   tools," remnants of electronic files contained in a computer's "space on the hard drive that
8   is not allocated to an active file" can be recovered years after they have been deleted. She
9   explained that "[r]ecovery of *residue of electronic files* from a hard drive requires
10  specialized tools and a controlled laboratory environment." Exhibit A at ¶ 26d (emphasis
11  added); Exhibit B at 24d¶. Unfortunately, she intentionally omitted from her search
12  warrant affidavit that "residue of an electronic file" from the Seagate Hard Drive is
13  exactly what the Geek Squad and Agent Riley reviewed. Further, her grand jury
14  testimony specifically provides that the alleged child porn was found on the Seagate Hard
15  Drive's "unallocated space." *See* Agent Kayle's 11/12/2014 Grand Jury testimony at 14
16  and 25, filed separately under seal and referred to herein as Exhibit E.      Again, her
17  affidavits intentionally omit this critical fact.

18      It is also clear that Agent Riley (who actually reviewed the child porn) knew that
19  both the Geek Squad and the FBI's own computer expert used specialized forensic tools
20  to access the alleged child porn and that the alleged child porn could not be accessed
21  without special forensic tools. As Agent Riley stated in an internal FBI report:

22      Once back at the Louisville office the hard drive was attached to a forensic
23      write blocker, a scan was performed with a preview tool. It was determined
        that the data on the hard drive is underlying, meaning that a scan needs to be
24      done for formatted files using a forensic tool that carves jpg images. Since
25      the Geek Squad uses tools similar to forensic tools used by the FBI's RCFLs
        [Regional Computer Forensic Laboratories] it is not possible to view images
26      without using a forensic tool to carve the image.

27  Exhibit C. But again, the fact that both the Geek Squad and the FBI needed specialized
28  forensic tools to review the child porn was left out of Agent Kayle's Affidavit. That is

because she would have had to also explain that it is *extremely* unlikely that Dr. Rettenmaier also possessed such tools.

### 2. Someone Had Attempted to Delete the Child Porn

The Kayle Affidavit never says that someone had attempted to delete the child pornography. But someone did. As the Ninth Circuit explained in *Flyer,* the unallocated space on a computer contains *only* deleted data. *Flyer,* 633 F.3d at 918. This information was omitted because it is inconsistent with the inferences upon which the search warrant affidavit was based. According to the Kayle Affidavit, "Individuals who have a sexual interest in children or images of children **typically retain** pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, "child erotica" . . . and videotapes **for many years.**" Exhibit A at ¶24c (emphasis added); Exhibit B at ¶24c. Such persons **retain** their collections "**for several years** . . . to enable the person to view the collection." Exhibit A at ¶24d (emphasis added); Exhibit B at ¶24d.   Further, such persons "**rarely destroy** correspondence from other child pornography distributors/collectors." Exhibit A at ¶24e (emphasis added); Exhibit B at ¶24e.   Disclosing that someone had attempted to delete the child porn would have undermined the premise of the Kayle Affidavit—that the discovery of more child porn at Dr. Rettenmaier's home was likely because someone with a sexual interest in children rarely destroy their child porn because they want to keep looking at it.[2]

### 3. The Child Porn Could Only Be Accessed With Special Forensic Tools (That Dr. Rettenmaier Did Not Have)

Information on unallocated space can only be recovered with specialized forensic tools. *Flyer,* 633 F.3d at 918; Loehrs Decl. at ¶10; Exhibit A at ¶24d ("Recovery of

---

[2] It is impossible to know when or why the alleged child porn was deleted. It could have been deleted before Dr. Rettenmaier obtained the Seagate Hard Drive. It could have been deleted after the images were inadvertently downloaded, or downloaded against the user's will (whether that be Dr. Rettenmaier or someone else). Assuming Dr. Rettenmaier deleted them, they could have been deleted years earlier, so they would not have been knowingly possessed when the Seagate Hard Drive was delivered to Best Buy.

12

residue of electronic files from a hard drive requires specialized tools and a controlled laboratory."); Exhibit B at ¶24d (same); Exhibit C.   There is no evidence that Dr. Rettenmaier possessed such forensic tools and there is no reason to believe he did (especially since he was taking a computer to the Geek Squad).

### 4.   No One Can Say How, or How Long Ago, the Child Porn Was Placed on the Seagate Hard Drive

"[A]ll that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive. All other attributes—including when the file was created, accessed, or deleted by the user—cannot be recovered." *Flyer*, 633 F.3d at 918.   In fact, the material could have been placed there *before* Dr. Rettenmaier obtained the computer (for example, refurbished used computers can be purchased). Loehrs Dec. at ¶12.   Moreover, as one reputable source explained:

> The ease of internet communication and the low cost of transmitting electronic files have created new ways for individuals to become unintentional recipients of child pornography, and these means of delivery bear little resemblance to the bricks-and-mortar exchanges that Congress envisioned when drafting the original statute in 1977.   There are at least three new ways in which individuals might become unintentional recipients of child pornography in computer-based transactions: through unsolicited "spam" e-mails, pop-up advertisements during legal internet searches, and viruses.

Child Pornography, the Internet, and the Challenge of Updating Statutory Terms, 122 Harv. L. Rev. 2206, 2211 (2009) (footnote omitted).   This was the state of affairs in 2009, and there are now ever evolving ways to implant files on another's computer.   Loehrs Dec. at ¶12.[3]

///

---

[3] In fact, the defense submits that among younger generations, who were raised on computers and the internet, it is *common knowledge* that a person can click on a website and have items downloaded to their computer without their knowledge and/or against their will.

**C.   Dr. Rettenmaier Is Entitled to an Evidentiary Hearing and Suppression of the Evidence and Fruits of the Evidence Seized from His Home**

To obtain an evidentiary hearing to prove a *Franks* violation, Dr. Rettenmaier must establish: (1) the affidavit contained a misleading omission that was either deliberately made or made with a reckless disregard for the truth; and, (2) considering the omitted material, there is no probable cause. *See Kyllo,* 37 F.3d at 529.

The Kayle Affidavits omit material information. The fact that the Ninth Circuit has held that child porn on unallocated space is insufficient to prove possession of child pornography demonstrates the importance of the information. The fact that Dr. Rettenmaier could not access the information is also obviously important to the question of whether Dr. Rettenmaier knowingly possessed it (which is critical to whether the fact of possession suggests there would be more at his home). As explained above, the fact that someone necessarily tried to delete the child porn undermines the core reasoning of the Kayle Affidavits (that more child porn likely exists at Dr. Rettenmaier's home and on his computers because these type of people do not destroy it). And the fact it could have been put on Dr. Rettenmaier's computer before he ever possessed it, or even against his will, is also flatly inconsistent with the reasoning behind the Kayle Affidavits.

The omission was intentional. Agent Riley knows what unallocated space is. She knew she needed to use special forensic tools (like the ones the Geek Squad used) to access the alleged child porn. Exhibit C at 2. The affiant, Agent Kayle, is responsible for the knowledge that Agent Riley possessed. *Aviles,* 170 F3d at 867; *DeLeon,* 979 F.2d at 764. And both alleged child-porn experts (i.e., Agents Riley and Kayle) would know the legal implications of having child porn on unallocated space, as opposed to allocated space; that is, that it does not establish knowing possession.

Considering this information, there was no probable cause to search every computer in Dr. Rettenmaier's home. "Probable cause exists when, in light of all the evidence set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238. The actual information at the

14

time the search warrant was issued showed that Dr. Rettenmaier could not see or access the child porn and that someone had tried to delete it. In other words, it suggested he was an *unknowing* possessor. There was no evidence of how the contraband got onto Dr. Rettenmaier's hard drive, and it could have gotten there before he possessed the computer or against his will. Under these circumstances, there was no "fair probability" that more child porn would be found on his home computers.

This is an important issue because any other conclusion means that anyone in the world who has accidentally downloaded contraband and deleted it, or has come into possession of a computer that already has such hidden contraband on it, is subject to a warrant to search all of his or her computer records (at least if he is unlucky enough to have taken his computer to the Geek Squad or similar company). That cannot be the rule when the inadvertent "possession" of such digital contraband is so common. There needs to be some evidence the child porn was knowingly possessed to support the inference that more child porn will be found in a suspect's home.

Moreover, this same material omission infected the affidavit used to obtain the search warrant for the Seagate Hard Drive. While the harm from the unconstitutional search of the hard drive was not as great as the harm from the unconstitutional search of Dr. Rettenmaier's home, there was still a *Franks* violation. So, the fruit of the search of the Seagate Hard Drive must also be suppressed.

## V.  THE INTENTIONAL FALSE STATEMENT THAT AGENT RILEY VIEWED CHILD PORN ON THE SEAGATE HARD DRIVE INVALIDATES THE WARRANTS FOR BOTH THE SEAGATE HARD DRIVE AND DR. RETTENMAIER'S HOME

### A.  The Image Agent Riley Reviewed Does Not Meet the Definition of Child Pornography

#### 1.  The image of "Jenny"

Agent Kayle falsely stated in her affidavit that Agent Riley viewed "child pornography" at the Geek Squad center. Exhibit A at ¶¶ 7 and 18c; Exhibit B at ¶¶ 7 and

15

18c.    According to Agent Kayle, "due to the fact that [Agent Riley] immediately recognized an image of a known victim, Jenny, she did not take any notes as one image of child pornography was sufficient to seize the hard drive." Exhibit D at 1.  Agent Riley is wrong, and the fact that she is wrong in her understanding of what is and what is not child pornography should cause this Court to seriously question her expertise.  Instead, what Agent Riley viewed was an image of a young girl who had appeared in actual child pornography, but the specific image she reviewed was not itself pornographic.

Under federal law, child pornography is "a *sexually explicit* visual depiction that involves the use of a minor." 18 U.S.C. § 2256(8)(A) (emphasis added).[4]  A "minor" is "any person who is under the age of eighteen years." 18 U.S.C. §2256(1).  "Sexually explicit" means "actual or simulated– (i)sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii)bestiality; (iii)masturbation; (iv)sadistic or masochistic abuse; or (v)lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. §2256(2)(A).[5]

The image Agent Riley reviewed did not depict the child engaging in any sexual act, nor did it show her genitals.  Agent Kayle's description of that image was, at a minimum, recklessly false.[6]

While it may be that "Jenny" appears in other photos which are child pornography, none of those photos, if indeed they do exist, were observed on the Seagate Hard Drive which is the subject of the search warrant affidavit.  The critical point here is that the image which was viewed and described in the search warrant affidavit *is not* an image of

---

[4] " '[C]hild pornography' means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A)the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." §2256(8)(A).

[5] The alternative definition provided in §2256(2)(B) is irrelevant to the present argument because the minor has been identified as a genuine person by the Government.

[6] Dr. Rettenmaier requests that this Court order the government to produce the image that Agent Riley actually reviewed for the hearing on this motion.

16

1  child pornography.  There is no probable cause when you remove Agent Kayle's false
2  claims that Agent Riley reviewed actual child pornography.

3  ## 2.   Numerous images of child porn

4      Agent Kayle's Affidavits also falsely states that the one screen Agent Riley
5  reviewed contained additional photos and "it appeared all the photos depicted on the
6  screen contained possible child pornography, the majority of which depicted the genitalia
7  of young girls."  Exhibit A at ¶18b; Exhibit B at ¶18b.  This suspect claim does not
8  provide probable cause either.  To be child pornography, the images must be "sexually
9  explicit" as that term is defined by statute.  The mere depiction of genitalia does not meet
10 that standard.  *See* 18 U.S.C. § 2256(2)(A).  Nor does her affidavit state whether the
11 "young girls" appeared to be less than eighteen years old; another statutory requirement
12 for child pornography.  18 U.S.C. § 2256(1).

13     Regardless of whether the averred facts about reviewing numerous "images" meets
14 the statutory definition of child pornography, they are false.  In July of this year, Agent
15 Riley had a phone interview with the AUSA in this case, apparently in anticipation of a
16 defense motion to suppress.  Agent Riley said that "in 2012 when she seized the hard
17 drive," she did not take any notes or complete any more documentation, because once she
18 recognized the image of "Jenny," she had a enough information to seize the hard drive.
19 (As explained above, she was wrong and her error raises serious questions about her
20 alleged expertise.)  She was asked if there were any more images, as stated in the Kayle
21 Affidavit.  She purportedly responded "that, whenever she sends leads to other division[s],
22 she cuts and pastes the verbiage from a previous [electronic communication] so *she could*
23 *have cut and pasted from a previous document that had referred to multiple images when*
24 *drafting the [electronic communication]* to SA Kayle."  Exhibit D at 1-2 (emphasis
25 added).

26     The government was presumably unhappy with this answer and pushed back by
27 having Agent Riley review the Kayle Affidavit (it's not clear which one) and her own
28 electronic communication to Agent Kayle.  Agent Riley then back tracked, saying that she

now "recalled that there were partial images of genitalia of young girls that she saw on the screen," but because she was focused on "Jenny," she did not take any notes on these images and could not recognize them now.  Exhibit D at 2.

The defense submits that Agent Riley's first explanation is the more credible.  It was the first explanation (rather than a revised statement after she received some push back).  And it was a statement against her own interest, which adds to its credibility. Moreover, she made no effort to document her review of these other alleged images and she admitted she could not even recognize them now.  Under the circumstances, there is no reason to credit her claim to having reviewed multiple images.  Regardless, even if her second explanation were true, it is not clear what a "*partial* image of genitalia" is and it certainly does not meet the definition of child pornography (e.g., that the images be sexually explicit).

**B.    *Franks* Requires An Evidentiary Hearing and Suppression**

As noted above, "if a defendant makes a preliminary showing that statements in a warrant affidavit may be false, he is entitled to a hearing to determine the validity of the supporting affidavit. If he shows that statements in the affidavit are false, the court must assess whether the warrant would have issued even in the absence of those statements." *Christakis,* 238 F.3d at 1167 n.1.[7]

The Magistrate was led to believe that Agent Riley actually viewed child pornography on the Seagate Hard Drive, when what was viewed was not child pornography. The above facts establish that Defendant has made a preliminary showing entitling him to an evidentiary hearing to prove that the search warrants for the Seagate Hard Drive and Dr. Rettenmaier's home was obtained with false evidence, and that when the false evidence is removed, there is no probable cause to support either search.

---

[7] The district court's determination as to whether probable cause is lacking because of alleged misstatements and omissions in the supporting affidavit is reviewed *de novo* on appeal.  *See United States v. Hernandez,* 80 F.3d 1253, 1260 (9th Cir.1996), *overruled on other grounds, United States v. Medina-Chavarin,* 147 F.3d 1161 (9th Cir.1998)." (*Id.*, at 963, n. 6.)

18

## V. CONCLUSION

When seeking a search warrant for every digital device in a person's home, based upon the discovery of child porn on that person's hard drive that is dropped off at a computer store, law enforcement must disclose to the issuing Magistrate whether the contraband was found on the hard drive's unallocated space. If so, law enforcement must explain the implications of that fact on the question of whether the child porn was knowingly possessed (at least where, as here, all the arguments and inferences in the search warrant application are premised on the fact that the child porn was knowingly possessed). And law enforcement must explain what other facts exist to suggest that the child porn was knowingly possessed.

Here, the FBI intentionally omitted the fact that the alleged child porn was found on the unallocated space of the Seagate Hard Drive. The FBI never explained that Dr. Rettenmaier could not access it without forensic tools, there was no evidence he had such tools, and there was no way to know how or when it got onto his hard drive. Instead, the Kayle Affidavit suggests the opposite—that Dr. Rettenmaier obviously knew of the alleged child porn, which showed he has a sexual interest in children, and therefore makes it likely he had more child porn at his home. Nor did the FBI explain that it was necessarily deleted by someone. Finally, the Kayle Affidavit provides no other reasons (besides the alleged child porn's presence on the hard drive) to believe the child porn was knowingly possessed. Thus, considering the intentionally omitted information, there was no probable cause to search Dr. Rettenmaier's home (or the Seagate Hard Drive) and all fruit of those unconstitutional searches must be suppressed.

///

///

19

1     Additionally, the affiant's knowing failure to distinguish between child
2  pornography and non-pornography infected both search warrants. For all these reasons,
3  Dr. Rettenmaier is entitled to an evidentiary hearing and suppression of the fruits of both
4  search warrants.

6  Dated: October 30, 2015           BIENERT, MILLER & KATZMAN, PLC

8                       By: _____
                             James D. Riddet

                          Attorneys for Defendant Mark Rettenmeier

20