James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant
Mark Rettenmaier

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MARK RETTENMEIER,<br><br>Defendant | Case No. SA CR 14-0188 CJC<br><br><br><br>Date: 2/1/16<br>Time: 9:00 AM |

NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMAIER

TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S

COMPUTER BY PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES IN

SUPPORT; EXHIBITS

278421-1

NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMAIER TO
SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY
PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES IN SUPPORT; EXHIBITS

# TABLE OF CONTENTS

Table of Contents .................................................................................................. ii

Table of Authorities ............................................................................................. iii

Notice of Motion .................................................................................................. 1

Motion of Defendant Mark Rettenmaier to Suppress Evidence Based on
  Illegal Search of Defendant's Computer by Personnel of Best Buy ................ 2

Memorandum of Points and Authorities in Support of Motion to Suppress
  Evidence ........................................................................................................... 3

    Introduction ................................................................................................... 3

    Statement of Facts ........................................................................................ 3

    A.  The Evidence Seized from Defendant's Personal Computer During
        Search by a Private Person and Then Turned over to Authorities
        Was Unlawful Within the Fourth Amendment and Must
        Be Suppressed ........................................................................................ 7

Conclusion ........................................................................................................... 13

Exhibits

Proof of Service

# TABLE OF AUTHORITIES

Cases:

*Burdeau v. McDowell*, 256 U.S. 465 .................................................................. 7

*Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966) ................................... 7

*Lustig v. United States*, 338 U.S. 74 (1949) ..................................................... 7

*Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989) ................................ 11

*Thacker v. Commonwealth*, 310 Ky. 702, 221 S.W.2d 682 (1949) ................... 8

*United States v. Andrews*, 618 F.2d 646, 650 (10th Cir. 1980) ...................... 11

*United States v. Miller*, 688 F.2d 652 (9th Cir. 1982) ...................................... 7

*United States v. Reed*, 15 F.3d 928 (9th Cir. 1994) ........................................... 7

*United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996) ....................... 11

*United States v. Storey*, 2013 U.S. Dist. Lexis 158017, *5-*6 ......................... 11

*Walter v. United States*, 47 U.S. 649 ................................................................ 10

Publications:

*LaFave*, Search and Seizure: A Treatise on the Fourth Amendment (3rd)
   (1996), Ch.1, § 1.8(b) ................................................................................ 7, 8

Note 19 Stanford L. Rev. 608, 614-615 (1967) ............................................. 13

277894-1

NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMAIER TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES IN SUPPORT; EXHIBITS

James D. Riddet, Esq. (SBN 39826)
jriddet@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Defendant
Mark Rettenmaier

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | Case No. SA CR 14-0188 CJC |
|---|---|
| Plaintiff | NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMAIER TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES IN SUPPORT; EXHIBITS; EXHIBIT 3 FILED CONCURRENTLY UNDER SEAL |
| v. | |
| MARK RETTENMEIER, | |
| Defendant | |
| | Testimony Required |
| | Date: 2/1/16 |
| | Time: 9:00 AM |

## NOTICE

TO: PLAINTIFF, UNITED STATES ATTORNEY, CENTRAL DISTRICT OF CALIFORNIA, GREGORY SCALLEY, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on Monday, February 1, 2016 at 9:00 a.m., Defendant, Mark Rettenmaier, by and through counsel of record, James D. Riddet, Bienert, Miller & Katzman, will bring on for hearing the following motion:

## MOTION

Defendant, Mark Rettenmaier, by and through counsel of record, James D. Riddet, Bienert, Miller & Katzman, moves this Court for an order suppressing any and all evidence including fruits derived therefrom as a result of the search of defendant's computer by Best Buy/Geek Squad personnel.

The basis for this motion is set forth in the attached Memorandum of Points and Authorities, together with any and all evidence presented at the hearing of this motion.

Dated: October __, 2015

        Respectfully submitted,

        BIENERT, MILLER & KATZMAN

        _____
        James D. Riddet
        Attorneys for Mr. Rettenmaier

2

NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMEIER TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES; EXHIBITS

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

## INTRODUCTION:

This motion addresses a search of a Seagate 1 Terabyte internal hard drive, serial number 9TE243V2 ("Seagate Hard Drive") which was conducted by personnel of Best Buy/Geek Squad, to whom the defendant delivered his computer for repair.

In this motion, defendant argues that the search by the personnel at Best Buy/Geek Squad was a government search without warrant, and thus illegal unless the government can establish an exception to the warrant requirement. Although the search was conducted by a private person – a technician at Best Buy/Geek Squad – the evidence will show that in actuality the search qualifies as a government search.

## STATEMENT OF FACTS:

On or about November 11, 2011, Defendant delivered the Seagate Hard Drive to a local Best Buy location for repair. The computer was transferred to a location in Kentucky where it was searched by an employee of Best Buy/Geek Squad by the name of Trey Westphal.[1]

Prior to the filing of this motion, counsel for Dr. Rettenmaier sought an order from this Court authorizing the issuance and service of a Rule 17(b) subpoena on Best Buy. In addition, the government disclosed in discovery the personnel file of Westphal. From the discovery produced and the documents produced in answer to the subpoena on Best Buy, a number of records were revealed which demonstrate that the search by Westphal of the Seagate Hard Drive was a government search and not a private search.[2]

Attached as Exhibit 1 is a document produced in discovery that appears to be authored by Trey Westphal. As the Court can see, Westphal states the following: (1)

---

[1] The date that the computer was actually delivered to Best Buy is not clear, because there are two records from Best Buy, one with a date of November 1, 2011, and another with a date of November 25, 2011.

[2] At the time of preparation of this motion, both the government and the defense have not been able to locate Westphal and interview him.

3

1  He was performing "a data review of the format recovery that was ran." (2) Westphal
2  looked for "client mission criticals (sic) of Pictures and Video. (3) "While the search
3  information populated" he observed "a lot of Album Art pictures coming up. (4) He
4  elected to "filter them out by revising my search to 'kind: picture width:>200." (5) He
5  observed a "lot of corrupt images." (6) He believed at that time, he "felt [he] needed to
6  review due to what appeared to be inappropriate content."

   Attached as Exhibit 2 to this motion are portions of the personnel file of Trey
8  Westphal. A number of pages from this personnel file reveal that Westphal was a
9  troublesome employee. For example, the Court is directed to the following pages of
10 the personnel file:
11 Page 593   Westphal threw an object at another employee: 6/11/14
12 Page 595   Westphal acknowledged being placed on suspension: 8/23/12
13 Page 602   Westphal refused to abide by a new call policy: 6/12/13
14 Page 608   Westphal bit another employee: 6/30/11
15 Page 612   History of non-verbal behavior, intimidation: 2/6/14
16 Page 614   History of inappropriate behavior including intimidation, disregard of
17             leadership direction.
18    What is more important to this motion is evidence that Westphal went beyond
19 what he was required to do on occasions. For example, on Page 610, there is a
20 Performance Counseling Record dated 11/19/13 stating that Westphal spends
21 "excessive amount of efforts on projects that haven't been assigned to him" and has
22 been "wandering around the department, away from his work area without work
23 related reasons." The report further states that Westphal "has been injecting himself
24 into projects that he hasn't been assigned …" On Page 611, there is another
25 Performance Counseling Record dated 11/22/13. This refers to the earlier date and
26 states that the company had a discussion with Westphal "about not reaching processing
27 duties unless authorized." This demonstrates that Best Buy spoke to Westphal telling

1 | him that he should not reach beyond processing duties unless authorized. On the top of
2 | that page, there is a notation which states the following: "On November 20th, Trey
3 | Westphal engaged in an unapproved project, cleaning of the DRD NAS, after being
4 | informed not to work on assignments outside of his designated duties" and that on the
5 | same date he "sent an email to SSCIA Deven Hall that was sarcastic and retaliatory in
6 | nature."

This apparent penchant of Westphal to reach beyond "processing duties" must be considered in light of written policies at Best Buy regarding working with law enforcement. Filed concurrently and under seal is Exhibit 3 is a record produced by Best Buy in response to a defense subpoena. The title of the record is "Child Pornography on a Client PC (California) – Geek Squad Services." On the first page of the document, employees are instructed never to search the content of a client's PC. The remainder of the record provides guidance on how to interact with law enforcement. Employees are instructed to notify a Front End Leader if an agent suspects child pornography and that the Front End Leader is instructed to notify law enforcement.

There are also records disclosed in discovery which demonstrate a continuing and close relationship between Special Agent Riley – who is the agent on this case who was contacted by Best Buy and seized the computer from them. For example, attached as Exhibit 4 is an FBI document entitled CHS Reporting Document dated 7/27/10. This record shows that Special Agent Riley communicated with Source 62, who, as shown below, is Best Buy employee Justin Meade. On the second page (Bates 529) Agent Riley states the following: "Source reported all has been quite (sic) for about the last 5 – 6 months, however, source agreed that once school started again, they may see an influx of CP." This suggests that Agent Riley is periodically checking in with Meade.

Attached as Exhibit 5 is another of the same type of report from Agent Riley stating that Source 62 (Meade) contacted her on 9/20/10 (two months later) and advised that a "customer had a potential CP." The agent went to that location and seized the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMEIER TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES; EXHIBITS

hard drive. Attached as Exhibit 6 is another of the same type of report dated 10/25/10 in which Source 62 (Meade) reported a thumb drive "thought to have CP on it."

Attached as Exhibit 7 is another of the same report of a contact by Source 62 (Meade) in which Meade contacted Agent Riley that a customer submitted a computer "to have its erased hard drive recovered" and that CP was viewed." Attached as Exhibit 8 is another report dated 3/29/11 in which Source 62 (Meade) contacted Riley about another computer with CP. Attached as Exhibit 9 is another report dated 8/5/11 in which Source 62 (Meade) contacted Riley of "potential CP on a hard drive." Attached as Exhibit 10 is another report of a contact by Source 62 (Meade) of another "possessor of CP and possibly a trader." Attached as Exhibit 11 is another report of a contact by Source 62 (Meade) regarding an inquiry by "Squad 6 SA Joe Ranieri. Attached as Exhibit 12 is another report of a contact by Source 62 (Meade) dated 1/9/12. The report discusses the contact of Agent Riley regarding a page of images and known CP. Attached as Exhibit 13 is another report of an attempted contact by Agent Riley of Source 62 (Meade) but he was on vacation. Attached as Exhibit 14 is another report dated 8/14/12 of a contact by Source 62 (Meade) of a thumb drive with at least one image of CP. This series of contacts between one source at Best Buy demonstrates a very close and continuing relationship between Best Buy and the FBI. But there is more. Attached as Exhibit 15 is a record of emails between the FBI and Best Buy. The email exchange is between Meade and Agent Riley and begins on Page 542. Meade emails Agent Riley using the agents first name, Tracey, and states that "we have another one out of California we want you to take a look at, when can you swing by?"

Meade was interviewed by the FBI on 3/27/15 regarding this case.

///

A.

## THE EVIDENCE SEIZED FROM DEFENDANT'S PERSONAL COMPUTER DURING THE SEARCH BY A PRIVATE PERSON AND THEN TURNED OVER TO AUTHORITIES WAS UNLAWFUL WITHIN THE FOURTH AMENDMENT AND MUST BE SUPPRESSED

Although the Supreme Court has held that the exclusionary rule does not apply to illegal searches conducted by private citizens (*Burdeau v. McDowell*, 256 U.S. 465) it is not a private person search if police officers participated in the search in some way, even if not involved in the physical search itself. "[E]ven when the physical act of searching is by a private person, it may generally be said that the search is still governmental action if it is instigated by the authorities or the authorities have participated in the search is some way." (*LaFave*, Search and Seizure: A Treatise on the Fourth Amendment (3rd) (1996), Ch.1, § 1.8(b), p. 222.) In *United States v. Reed*, 15 F.3d 928 (9th Cir. 1994), officers were present when a private person searched a motel room. The Court held this was state action, subject to the exclusionary rule.

In *Lustig v. United States*, 338 U.S. 74 (1949) the Court held that it is not essential that the governmental official be involved in the endeavor at the very outset. It is "immaterial" whether the government official "originated the idea or joined in it while the search was in progress" and it is sufficient that the official "was in it before the object of the search was completely accomplished." See also, *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966) [government agents joined actively in the search by private persons.] The Ninth Circuit has also held that an informant's intent to assist law enforcement is relevant.

In *United States v. Miller*, 688 F.2d 652 (9th Cir. 1982) the Court held that is was relevant that the intent of the private searcher was or was not to help the police enforce the law. Here, it is evident that the policy statements of the Geek Squad are designed to assist law enforcement in searching for child pornography, and the printed literature of the company clearly states that it has that policy.

1    In addition, any pre-search governmental encouragement is relevant, such as when
2  agents encourage or assist private persons who have access to private information or
3  property to search it for contraband.
4    In one case, where the police made an appeal to the public at large to make a
5  citizen's arrest of a named person wanted for murder, and a citizen's group does so and
6  searched him, the incidental search was held government action in *Thacker v.*
7  *Commonwealth*, 310 Ky. 702, 221 S.W.2d 682 (1949).
8    *LaFave* also says that where there is general police encouragement to search
9  coupled with no legitimate private purpose in such a search, other than to help the
10 police, it is governmental action.
11   Here, the employee had no legitimate private purpose in searching the
12 unallocated space of Defendant's computer. In fact, the search of the unallocated space
13 was nothing more than an effort to respond to the company policy that expresses a zero
14 tolerance for child pornography. The Geek Squad had inquired of Dr. Rettenmaier
15 whether he needed the data on the computer, or not, and he indicated to them that he
16 did not care about the data but wanted the computer to work. He was perfectly willing
17 to have them replace the hard drive with a new one, so there was no legitimate purpose
18 for searching the hard drive, let alone searching the unallocated space on it.
19   Thus there was no independent private purpose other than to detect crime and
20 assist in prosecution, which is the ongoing policy of the Geek Squad. (Please see
21 Policy Statement, filed concurrently and under seal, Exhibit 3.)
22   In the present case, the apparent purpose of the actions of the Best Buy/Geek
23 Squad personnel is to search computers whenever possible to look for contraband, and
24 in particular for child pornography.
25   First, the apparent purpose of employee Westphal in "filtering" the "Album art"
26 that was populating his search was to look for a particular kind of picture despite the
27
28

fact that there was no specific customer complaint regarding pictures or particular types or sizes of images.

Second, it is apparent that Westphal's actions were consistent with his habit of going beyond what is required to do to fulfil his obligations under his repair order, even in violation of company policy.

Third, there is no reason to believe that any of Westphal's searching actions (i.e., searches of Defendant's computer hard drive) were either *assigned* to him, or necessary to complete the task for which Defendant sent his computer to Best Buy.

This conduct shows individual action that contradicts the written policy of Best Buy, and further supports the conclusion that Westphal was determined to search Defendant's computer solely to look for and subsequently report "inappropriate" content, without authorization from Defendant or his employer. (See under seal Exhibit 3).

There is a series of reports from the FBI of a number of contacts with Source 62, who is the supervisor who reported the Rettenmaier case to Agent Riley.

These reports are summarized on Exhibits 4 – 15. These reports are strong evidence that there is a continuing relationship between Source 62 and Agent Riley, the agent in our case.

Exhibit 4 seems to be Source 62 checking in with Agent Riley and telling her that all has been quiet (report mistakenly states quite" but it is clear that it means quiet.

Source 62 tells Agent Riley that "they may see an influx of CP" when school starts. Then following Exhibit 4, there are several in which Source 62 is dutifully reporting to Riley what they found.

This two-way thoroughfare of information suggests that the FBI considers Source 62 (the Supervisor who reported the suspected child pornography in this case to the FBI) to be a partner in the ongoing effort of law enforcement detect and prosecute child pornography violators, and that Source 62 agrees.

10
NOTICE OF MOTION AND MOTION OF DEFENDANT MARK RETTENMEIER TO
SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY
PERSONNEL OF BEST BUY; POINTS AND AUTHORITIES; EXHIBITS

This inference that the FBI and Source 62 are working together is reinforced by the fact that the FBI is giving Source 62 instructions going forward, clearly anticipating additional instances of him detecting child pornography which will then be handed over to the FBI.

In what is widely recognized as the strongest statement of the rule prohibiting suppression of evidence when it is the result of a private party search, Justice Blackman expressed his own view that the Court had gone too far in *Walter v. United States*, 47 U.S. 649.

Even Justice Blackman's statement of the rule, however, supports Defendant's position that here the search is subject to Fourth Amendment strictures.

> "The Court at least preserves the integrity of the rule specifically recognized long ago in *Burdeau v. McDowell*, 256 U.S. 465 (1921). That rule is to the effect that the Fourth Amendment proscribes only governmental action, and does not apply to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." Blackman, J., dissenting in *Walter v. United States*, 47 U.S. 649, 662 (1980).

Here it is very clear that Best Buy, and specifically the Supervisor who reports its technician's discovery of "inappropriate" content on customer's computers, are not only working together, but actually *planning* to conduct more such searches in the future.

When, Special Agent Riley states, "they may see an influx" of such content, he is imparting "knowledge of a governmental official" to the Best Buy agent, and advising him that the government will be anticipating future discoveries by the Best Buy technicians to be handed over to the FBI.

These conversations appear to meet the "participation *or knowledge of any governmental official*" requirement set forth by Justice Blackman.

Applying this test, the Court in *United States v. Storey*, 2013 U.S. Dist. Lexis 158017, *5-*6 upheld a private person search stating:

> "There is no evidence that any FedEx employee received instructions, directions, encouragement, [*6] aid, or a tip from law enforcement. There is no evidence that any law enforcement officer received a tip about the package. The Court finds that law enforcement did not instruct, direct, aid, instigate, or encourage any FedEx employee to inspect, begin opening, or continue opening the package or its contents. The Court further finds that law enforcement did not receive any tip about the package or provide any tip to any FedEx employee."

The Court cited case law holding that the Fourth Amendment "does not protect against searches and seizures, even unreasonable ones, by private individuals who are not acting as agents of the government or with the knowledge or participation of a government official."

The Court went on to explain, that "if the government dominates, coerces, or directs a private person's actions, a resulting search and seizure may violate the Fourth Amendment. *Pleasant v. Lovell*, 876 F.2d 787, 796 (10th Cir. 1989). *Id.*, at *9.

In order to determine whether the private person has become the instrumentality of the government, the Court asks, "(1) did the government know of and acquiesce to the conduct and (2) did the party performing the search intend to assist law enforcement efforts or further his own ends?" citing *United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996). *Id.*, at *10.

The knowledge and acquiescence inquiry make it clear that a government agent affirmatively encourage, instigate, or initiate the private action so long as the government agent knew about it and acquiesced in it. *Id.* at 1243. See also *United States v. Andrews*, 618 F.2d 646, 650 (10th Cir. 1980) (discussing a situation in which the government "neither indirectly encouraged" nor directly participated" in the search.)

Here, the objective facts clearly show that the FBI agent encourages the Best Buy employee to conduct future searches for child pornography, referring to the lull in activity and their mutual expectation that activity would increase in the next season. This exchange appears to constitute direct encouragement, but without doubt establishes at lease "indirect encouragement."

This series of exhibits starting with Exhibit 4 is strong evidence of a government involved search, such that the search is not justified without compliance with the Fourth Amendment.

Moreover, Westphal has been found to go beyond what he is supposed to do under Best Buy's written policy, even though that policy already instructs employees to cooperate with the FBI.

All of this raises a strong inference that the searches by Best Buy are government searches.

The above demonstrates a "very close relationship" between one source at Best Buy and law enforcement and shows that the purpose of the searching in this case was for the benefit of law enforcement, not for the benefit of the customer

It is evident that this conduct transgressed the line between a private person search, and one undertaken by a private person for the benefit of law enforcement, and for no legitimate purpose. In short, under these circumstances, the Best Buy source was an agent of law enforcement, and his actions (undertaken without a search warrant) are subject to the rigors of the Fourth Amendment, under which they fail as a valid search or seizure.

The basis of the exclusionary rule is deterrence. When a private group is performing "essentially a public function" (like detecting and prosecuting crime), exclusion should be required if there is any police encouragement or participation if: (a) the searcher [has] an interest in obtaining convictions"; and (b) the searcher "commit[s]

1  searches and seizures regularly in order to be familiar enough with the rules to adapt his
2  methods to conform to them." (See Note 19 Stanford L. Rev. 608, 614-615 (1967).)

### Conclusion

Here, the confluence of the policy memorandum, specifically instructing the searching technicians on methods to use to conform to rules that apply in this area, together with the stated policy to turn over such evidence if found to the authorities, and the fact that there was no legitimate private purpose to the search of Defendant's computer, compels the Court to conclude this was a search under the Fourth Amendment, conducted without probable cause or a warrant, and thus that the evidence seized, and any fruits thereof, must be suppressed.

Dated: October __, 2015

                    Respectfully submitted,

                    BIENERT, MILLER & KATZMAN

                    _____
                    James D. Riddet

                    Attorneys for Mr. Rettenmaier

277847-1