EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
M. ANTHONY BROWN (Cal. Bar No. 243848)
Assistant United States Attorneys
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2624/(714) 388-3505
    Facsimile: (213) 894-0141/(714) 388-3708
    E-mail:   Gregory.Scally@usdoj.gov
              Anthony.Brown@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-188-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS IPHONE |
| v. | |
| MARK ALBERT RETTENMAIER, | Hearing Date: February 1, 2016 |
| Defendant. | Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the Hon. Cormac J. Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys M. Anthony Brown and Gregory S. Scally, hereby files its Opposition to Defendant's Motion to Suppress iPhone and Fruit of Its Illegal Seizure and Search (ECF No. 76).

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 4, 2016            Respectfully submitted,

                                         EILEEN M. DECKER
                                       United States Attorney

                                       LAWRENCE S. MIDDLETON
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                               /s/
                                       M. ANTHONY BROWN
                                       GREGORY S. SCALLY
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES....................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.....................................1

I.   INTRODUCTION........................................................1

II.  STATEMENT OF FACTS..................................................2

III. ARGUMENT............................................................5

     A.   Rettenmaier's iPhone Was Lawfully Seized in His House;
          Even If Seized in the Driveway, the Search Warrant
          Authorized the Seizure.........................................5

          1.   The Search Team Seized Rettenmaier's iPhone in
               His House, Not His Driveway...............................5

          2.   Even If the Search Team Had Seized Rettenmaier's
               iPhone in his Driveway, the Seizure Would Have
               Been Valid Under the Search Warrant.......................7

     B.   Seizing the iPhone From Defendant's Person While He
          Was Inside His House Was Also Authorized by the Search
          Warrant........................................................8

IV.  CONCLUSION.........................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**FEDERAL CASES**

United States v. Buckner, 179 F.3d 834 (9th Cir. 1999)...............9

United States v. Duque, 62 F.3d 1146 (9th Cir. 1995).................7

United States v. Giwa, 831 F.2d 538 (5th Cir. 1987)..................9

United States v. Gomez-Soto, 723 F.2d 649 (9th Cir. 1984)............9

United States v. Magana, 512 F.2d 1169 (9th Cir. 1975)...............8

United States v. McIver, 186 F.3d 1119 (9th Cir. 1999)...............8

United States v. McLaughlin, 851 F.2d 283 (9th Cir. 1988)............9

United States v. Micheli, 487 F.2d 429 (1st Cir. 1973)...............9

United States v. Percival, 756 F.2d 600 (7th Cir. 1985)..............7

United States v. Robertson, 833 F.2d 77 (9th Cir. 1987).............10

United States v. Sexton, 586 Fed. Appx. 304 (9th Cir. 2014)..........7

United States v. Sporleader, 635 F.2d 809 (10th Cir. 1980)..........10

Ybarra v. Illinois, 444 U.S. 85 (1979)...............................8

**OTHER AUTHORITIES**

Wayne R. LaFave, 2 SEARCH & SEIZURE (5th ed.)........................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Based on the fact that defendant Mark Albert Rettenmaier ("defendant" or "Rettenmaier") submitted to Best Buy/Geek Squad for data recovery repair an internal hard drive on which suspected images of child pornography were later discovered, the FBI obtained a search warrant for Rettenmaier's house.  The search warrant authorized the seizure of digital devices suspected of containing relevant evidence, including mobile telephones.  The morning the search warrant was executed, Rettenmaier was at work.  When his wife called to tell him about the warrant, Rettenmaier immediately left work and drove home.  When he arrived home, Rettenmaier parked in the driveway in front of the house, grabbed his iPhone from his car, and entered his house.  Inside his house, agents interviewed Rettenmaier and eventually seized the iPhone from Rettenmaier.

Rettenmaier contends that agents in the driveway area directed him to bring the iPhone into the house, and that this constituted a warrantless seizure of his iPhone.  Rettenmaier also argues that the seizure of the iPhone while he was inside the house exceeded the scope of the warrant because it was from his person, not from the premises identified in the warrant.  On these two bases, Rettenmaier has moved to suppress the iPhone and all evidence found on it (the "Motion").  (ECF No. 76.)

The Court should deny Rettenmaier's Motion because it is both factually and legally unsupported.  Agents did not order Rettenmaier to bring his iPhone inside the house; the attached declarations from each of the seventeen members of the team that executed the warrant establish this, and audio recordings of the agents' interactions with

Rettenmaier that morning make clear that he retained possession of and was free to use the iPhone until it was eventually seized inside the house. Even if the iPhone was seized in the driveway, as Rettenmaier contends, binding precedent makes clear that the seizure was valid under the residential search warrant. Finally, the seizure of the iPhone from defendant's person inside the house was also authorized by the search warrant because Rettenmaier was specifically identified in the search warrant, and the agents had reason to suspect both that he was involved in criminal activity and that the iPhone contained evidence identified in the warrant.

## II.  STATEMENT OF FACTS

On February 14, 2012, a team of law enforcement agents executed a search warrant at Rettenmaier's house located at 25462 Rodeo Circle in Laguna Hills, California. (See Rettenmaier Decl. ¶ 2; Kayle Decl. ¶ 7.)[1] The search warrant particularly described the residence, including the driveway located out front, and authorized agents to search for and seize digital devices, including "mobile telephones," suspected of containing evidence of child pornography. (See Defense Ex. A, at 142, 146.)

---

[1] Attached to this motion are declarations from the following law enforcement officers who participated in the search of Rettenmaier's house: FBI Special Agents Joey Abelon, Mark Burnett, Joseph Ferrarer, Christopher Kajfosz, Tanaz Korami, Todd Munoz, and Steven Wrathall; and all other members of the team, including Paul Carvo, Boyd Galarpe, Angel Harjala, Terry Hom, Claudia McCarthy, Nhan Nguyen, Bernell Trapp, and Tamara Williams. Concurrently filed with this Opposition as a separate document is a declaration from FBI Special Agent Cynthia Kayle. Also concurrently filed with this Opposition is a declaration from Task Force Officer David Barr, with two audio recordings attached as exhibits to the declaration. Each of these declarations is referred to herein by the officer's last name followed by the relevant paragraph.

The search team consisted of seventeen law enforcement officers, including Special Agent Cynthia Kayle ("SA Kayle"). (Kayle Decl. ¶ 7.) Before executing the search, the search team members learned that a number of firearms were registered to defendant. (E.g., Kayle Decl. ¶ 8.)

Rettenmaier was not at home when the search team arrived at his house. (Rettenmaier Decl. ¶ 2.) Rettenmaier's wife, Diane Casanova ("Casanova"), who was at home, told the search team that Rettenmaier was at work performing surgery that morning. (Korami Decl. ¶ 3.) One of the agents asked Casanova if it was possible to have Rettenmaier come to the house so that the agents could speak with him. (Korami Decl. ¶ 3.) Casanova then called Rettenmaier and told him he "needed to come home immediately." (Rettenmaier Decl. ¶ 2.)

Upon learning that Rettenmaier was on his way home, and having been informed by Casanova that he had a firearm in his car, four members of the search team waited for Rettenmaier in the house's driveway for the sole purpose of ensuring that Rettenmaier did not attempt to enter the house with a firearm. (Barr Decl. ¶ 4; Korami Decl. ¶ 4; Wrathall Decl. ¶ 4; Trapp Decl. ¶ 4.) When Rettenmaier arrived in his car a short time later, agents asked him if he had a firearm in the car. (Barr Decl. ¶ 5.) Rettenmaier said that he did. (Barr Decl. ¶ 5; Korami Decl. ¶ 5.) Accordingly, one of the agents temporarily seized the firearm from the car. (Korami Decl. ¶ 5; Wrathall Decl. ¶ 5; Trapp Decl. ¶ 5.) The garage door of the house had been disabled, preventing Rettenmaier from pulling his car into the garage. (Rettenmaier Decl. ¶ 3.)

When Rettenmaier indicated to the agents that he wanted to go inside his house, the agents escorted him there. (Barr Decl. ¶ 5.)

3

Before he got out of his car, however, one of the search team members saw him grab something from inside the car. (Barr Decl. ¶ 5.) None of the search team members in the driveway at this time directed Rettenmaier to bring his iPhone with him inside the house, to leave his iPhone in the car, or to do anything at all with his iPhone. (Barr Decl. ¶ 6; Wrathall Decl. ¶ 6; Korami Decl. ¶ 6; Trapp Decl. ¶ 6.) None of the search team members outside his house instructed, directed, ordered, or asked Rettenmaier to bring anything at all inside his house. (Barr Decl. ¶ 6; Wrathall Decl. ¶ 6; Korami Decl. ¶ 6.)

Once Rettenmaier had entered his house, SA Kayle and Task Force Officer David Barr ("TFO Barr") spoke with him about the search warrant. (Kayle Decl. ¶ 11; Barr Decl. ¶ 7.) This included giving Rettenmaier a copy of the warrant that made clear that the offense being investigated involved child pornography. (Kayle Decl. ¶ 11.) During the conversation, defendant received and answered a work-related telephone call on his iPhone. (Rettenmaier Decl. ¶ 4; Kayle Decl. ¶ 12; Barr Decl. ¶ 7.) An audio recording of the agents' interview with Rettenmaier inside the house that morning clearly captures Rettenmaier receiving the telephone call. (Barr. Decl. ¶ 7 & Ex. A, at 1:10 to 1:30.)

Even after Rettenmaier took this telephone call, the agents did not immediately seize the iPhone. (Barr Decl. ¶ 7.) In fact, a substantial period of time passed before search team members seized the iPhone. In the intervening time, the agents discussed with Rettenmaier the possibility that the wireless router in his home was unsecured, allowing others to access it without his permission. (Kayle Decl. ¶ 13; Barr Decl. ¶ 8.) TFO Barr asked Rettenmaier if he

4

understood what the agents "were looking for in the warrant," to which Rettenmaier replied, "Yeah, I do." (Kayle Decl. ¶ 13; Barr Decl. Ex. A, at 6:08-6:15.) TFO Barr suggested that Rettenmaier take his iPhone outside to check the strength of the WiFi connection from outside the house. (Barr Decl. ¶ 8.) After that, and after a discussion with Rettenmaier about his safe, TFO Barr finally told Rettenmaier his iPhone would be seized. (Barr Decl. ¶ 9.) Again, TFO Barr's statement is clearly captured on an audio recording of his interview with Rettenmaier. (Barr Decl. Ex. B, at 3:02–3:05.)

## III. ARGUMENT

### A. RETTENMAIER'S IPHONE WAS LAWFULLY SEIZED IN HIS HOUSE; EVEN IF SEIZED IN THE DRIVEWAY, THE SEARCH WARRANT AUTHORIZED THE SEIZURE.

#### 1. The Search Team Seized Rettenmaier's iPhone in His House, Not His Driveway.

Rettenmaier's Motion relies on allegations that are simply untrue. The crux of Rettenmaier's argument is that he was ordered to bring his iPhone inside the home by an unknown agent. However, none of the seventeen agents present during the search that day actually ordered Rettenmaier to bring his iPhone inside the house; none of them remembers hearing or seeing any other agent do so, either. To the contrary, the search team members who were present in the driveway when defendant arrived that morning all state that they did <u>not</u> direct Rettenmaier to bring his iPhone from the car inside the house. (Barr Decl. ¶ 6; Wrathall Decl. ¶ 6; Korami Decl. ¶ 6; Trapp Decl. ¶ 6.)

Defendant's credibility on this issue must be questioned given the clear inaccuracy of his claim that agents seized his iPhone

5

1  inside the house immediately after he completed a telephone call.
2  (Rettenmaier Decl. ¶ 4.)  This claim is plainly contradicted by an
3  audio recording of the incident that captures both the telephone call
4  and, approximately ten minutes later, TFO Barr suggesting that
5  Rettenmaier take his iPhone outside the house to check the
6  accessibility of the WiFi connection.  (<u>See</u> Barr Decl. Ex. A, at
7  13:18 to 13:51.)  TFO Barr can be heard even later than that, on a
8  second recording of the agents' interview with Rettenmaier, saying,
9  "They're going to take that computer.  They're going to take your
10 phone."  (Barr Decl. Ex. B, at 3:02-3:05.)  The iPhone was the only
11 cell phone seized from Rettenmaier's residence on February 14, 2012.
12 (Kayle Decl. ¶ 14.)
13     Defendant's argument that the agents engaged in "flagrant"
14 conduct by "lur[ing]" defendant back to the home, ordering him to
15 bring his iPhone inside, and then seizing it (Mot. 8), is at odds
16 with testimony of all the search team members as well as the
17 uncontroverted evidence that defendant maintained possession of his
18 iPhone, and was free to use it, for more than ten minutes after
19 entering his house.  Indeed, the whole notion that the search team
20 was even aware of the legal niceties surrounding the physical extent
21 of a house's curtilage -- much less that they deliberately "coaxed"
22 Rettenmaier back to his house with the idea of seizing the iPhone
23 once he was safely within the scope of the search warrant -- is
24 contradicted by the fact that the agents (1) disabled Rettenmaier's
25 garage door (Rettenmaier Decl. ¶ 3), preventing him from entering a
26 location covered by the warrant, and (2) allowed Rettenmaier to
27 maintain control over the iPhone even after he had learned of the
28 nature of the search warrant.

2. <u>Even If the Search Team Had Seized Rettenmaier's iPhone in his Driveway, the Seizure Would Have Been Valid Under the Search Warrant.</u>

Defendant argues that the search warrant did not authorize seizure of the iPhone from his car because the driveway where the car was located was outside the curtilage of his home. (Mot. 5.) In focusing on the concept of curtilage, however, defendant ignores binding precedent holding that a search warrant for a house also authorizes a search of the homeowner's automobile if found on the premises. In <u>United States v. Duque</u>, 62 F.3d 1146 (9th Cir. 1995), for example, agents with a search warrant for Duque's residence searched a motor home and a car found on the premises. <u>Id.</u> at 1148. Duque argued that the agents exceeded the scope of the search warrant by searching the vehicles. <u>Id.</u> at 1151. The Ninth Circuit rejected this argument, holding that, "[a]lthough search warrants ideally state their full scope with particularity, 'a search warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises.'" <u>Id.</u> (quoting <u>United States v. Percival</u>, 756 F.2d 600, 612 (7th Cir. 1985)); <u>see also</u> <u>United States v. Sexton</u>, 586 Fed. Appx. 304, 306 (9th Cir. 2014).

The warrant at issue particularly described Rettenmaier's house. (Def. Ex. A, at 142.) The warrant also stated that Rettenmaier was a current resident of the house and provided facts to support this conclusion. (Def. Ex. A, at 103, 108-109.) Search team members witnessed Rettenmaier arrive in his car, where Rettenmaier claims the iPhone was located. (<u>E.g.</u>, Barr Decl. ¶ 5; Rettenmaier Decl. ¶ 3.) Rettenmaier was the only person named in the search warrant

7

Case 8:14-cr-00188-CJC Document 95 Filed 01/04/16 Page 12 of 15 Page ID #:673

affidavit; indeed, he was specifically identified as the person who requested data recovery services for the hard drive on which suspected images of child pornography were found. (Def. Ex. A, at 103, 106-107.) The warrant authorized the seizure of digital devices, including "mobile telephones." (Def. Ex. A, at 146.) Under these circumstances, any search of Rettenmaier's car and seizure of the iPhone from it, had it happened, would have been well within the scope of the search warrant's authority.

Given the binding Ninth Circuit precedent on this issue, the cases defendant cites in support of his curtilage argument -- which discuss whether a person has a reasonable expectation of privacy in his driveway for purposes of determining the validity of a warrantless search of vehicles located there -- are beside the point. Even on the curtilage issue, defendant's cases are of limited use. In United States v. McIver, 186 F.3d 1119 (9th Cir. 1999), the defendant conceded the issue that his car was outside the curtilage of his home, so the case never really dealt with that issue. Id. at 1126. United States v. Magana, 512 F.2d 1169 (9th Cir. 1975), actually held that "[t]he driveway where Magana was arrested was within the curtilage of the house Magana was using" before turning to the question whether the police officers' warrantless entry into Magana's driveway invaded his reasonable expectation of privacy. Id. at 1170.

B.   SEIZING THE IPHONE FROM DEFENDANT'S PERSON WHILE HE WAS INSIDE
     HIS HOUSE WAS ALSO AUTHORIZED BY THE SEARCH WARRANT.

Defendant's second argument is that, because the iPhone was on his person at the time it was seized, the seizure was not authorized

8

by the warrant to search defendant's residence.  This argument also fails because it is entirely unsupported by the law.

It is true that "a warrant to search a place cannot normally be construed to authorize a search of each individual in that place." Ybarra v. Illinois, 444 U.S. 85, 92 n. 4 (1979) (invalidating search of bar patron where warrant authorized search of bar and bartender only).  But it is also "axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant."  United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984).  Indeed, a premises search warrant ordinarily authorizes the search of a person present at the premises, as well as his belongings, if the relationship between the person, the belongings, and the premises is such that officers could reasonably conclude that evidence of the crime could be found on the person or in his belongings.  See, e.g., United States v. Buckner, 179 F.3d 834, 839 (9th Cir. 1999) (Ybarra "has logical application where the facts and circumstances do not support an inference that the individual is connected to the proximate criminal activity"; but where, as here, "the attendant facts and circumstances support a fair probability that [defendant] was linked to the crime" being investigated, Ybarra does not apply); United States v. McLaughlin, 851 F.2d 283, 286-87 (9th Cir. 1988) (distinguishing Ybarra and holding that co-owner of business searched under valid warrant for business premises had a sufficient relationship to the premises to allow police to search his briefcase, even though he was not a target of the investigation); United States v. Giwa, 831 F.2d 538, 545 (5th Cir. 1987) (search of

defendant's bag was lawful because he was sleeping at the residence when police knocked and he opened the door clad in a bathrobe and slacks, factors tending to show he was more "than just a temporary presence in the apartment"); United States v. Micheli, 487 F.2d 429 (1st Cir. 1973) (a warrant issued for a business permitted search of the briefcase of the co-owner even though there was no evidence of his criminal activity); Wayne R. LaFave, 2 SEARCH & SEIZURE § 4.9(c) (5th ed.) (searching for listed items on a person not named in the search warrant who happens to be located at the subject premises is permissible if there is probable cause to believe that evidence which might be concealed or destroyed will be found on that person; "the requisite probable cause is most likely to be deemed present if the person searched lives at the place searched" or "was implicated by the search warrant affidavit in the crimes under investigation").

    Here, Rettenmaier was a resident at the house being searched. Rettenmaier was clearly a suspect, being the only individual named in the warrant and the person who had submitted the hard drive containing child pornography to Best Buy/Geek Squad that formed the basis of the probable cause for the warrant. Moreover, the search team reasonably could have concluded that Rettenmaier's iPhone contained evidence of the suspected offenses, such as images of child pornography. In fact, the search warrant specifically identified "mobile telephones" among the items to be seized. Rettenmaier's use of the iPhone in the agents' presence showed that it belonged to him. In these circumstances, it would be reasonable to conclude that evidence of the crime could be found on the iPhone, and thus the search warrant for Rettenmaier's house authorized the seizure.

The cases defendant cites do not compel a different result. In United States v. Sporleader, 635 F.2d 809 (10th Cir. 1980), as in Ybarra, the defendant was not named in the business search warrant and just happened to be present at the business when it was searched. Id. at 811. In United States v. Robertson, 833 F.2d 777 (9th Cir. 1987), agents detained and search the backpack of an unidentified woman spotted leaving a house for which agents had a search warrant. Id. at 779. As in Sporleader, the search warrant did not identify the woman by name, and the agents were aware of no facts supporting probable cause to conclude that she lived in the house or was even involved in the crime being investigated. Id. at 782 ("For all that was then known to the officers, Steeprow was an innocent visitor. Lacking from both the arrest warrant for Johnson and the search warrant for the premises was the slightest indication that Steeprow was involved in criminal activity."). In contrast to these two cases, Rettenmaier was specifically named in a search warrant for his own house and, given that he was specifically identified as the person who requested repair services on a computer hard drive where suspected child pornography was found, there was probable cause to believe he was involved in criminal activity. Sporleader and Robertson are not on point.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.

11