EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
M. ANTHONY BROWN (Cal. Bar No. 243848)
Assistant United States Attorneys
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2624/(714) 388-3505
     Facsimile: (213) 894-0141/(714) 388-3708
     E-mail:    Gregory.Scally@usdoj.gov
                Anthony.Brown@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-188-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BASED ON ILLEGAL SEARCH OF DEFENDANT'S COMPUTER BY PERSONNEL OF BEST BUY (ECF NO. 80) |
| v. | |
| MARK ALBERT RETTENMAIER, | |
| Defendant. | Hearing Date: February 1, 2016<br>Hearing Time: 9:00 a.m.<br>Location:   Courtroom of the<br>           Hon. Cormac J.<br>           Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys M. ANTHONY BROWN and GREGORY S. SCALLY, hereby files its Opposition to Defendant's Motion to Suppress Evidence Based on Illegal Search of Defendant's Computer by Personnel of Best Buy (ECF No. 80).

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 4, 2016             Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

           /s/
M. ANTHONY BROWN
GREGORY S. SCALLY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   INTRODUCTION......................................................1

II.  STATEMENT OF FACTS................................................1

III. ARGUMENT..........................................................5

     A.   LEGAL STANDARD...............................................5

     B.   TREY WESTPHAL DID NOT ACT AS A GOVERNMENT AGENT WHEN
          HE INADVERTENTLY DISCOVERED CHILD PORNOGRAPHY ON
          RETTENMAIER'S HARD DRIVE.....................................6

     C.   MEADE'S PRIOR CONTACTS WITH THE FBI DID NOT CONVERT
          WESTPHAL'S PRIVATE SEARCH INTO A GOVERNMENT SEARCH.........10

IV.  CONCLUSION.......................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**FEDERAL CASES**

Ghandi v. Police Dept. of City of Detroit, 823 F.2d 959 (6th
     Cir. 1987)...................................................12

Lugar v. Edmundson Oil Co., 457 U.S. 922 (1982)....................12

United States v. Barth, 26 F.Supp.2d 929 (W.D. Tex. 1998).........13

United States v. Grimes, 244 F.3d 375 (5th Cir. 2001)..............6

United States v. Gumerlock, 590 F.2d 794 (9th Cir. 1979) (en
     banc)....................................................5, 9

United States v. Hall, 142 F.3d 988 (7th Cir. 1998)................6

United States v. Jacobsen, 466 U.S. 109 (1984).....................5

United States v. Malbrough, 922 F.2d 458 (8th Cir. 1990)..........12

United States v. Meister, 596 Fed. Appx. 790 (11th Cir. 2015)......6

United States v. Peterson, 294 F.Supp.2d 797 (D.S.C. 2003).........6

United States v. Reed, 15 F.3d 928 (9th Cir. 1994).................5

United States v. Sherwin, 539 F.2d 1 (9th Cir. 1976) (en banc)...8, 9

United States v. Tosti, 733 F.3d 816 (9th Cir. 2013)...............6

United States v. Valen, 479 F.2d 467 (3d Cir. 1973)...............15

United States v. Walther, 652 F.2d 788 (9th Cir. 1981).........13, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant submitted a hard drive to Best Buy Geek Squad for repair in November 2011.  A Best Buy technician named Trey Westphal, in the course of repairing the hard drive, observed content on the hard drive he believed to be inappropriate, and alerted his supervisor, Justin Meade.  Justin Meade alerted Special Agent Tracey Riley of the FBI, who looked at the images, deemed them to be child pornography, and seized the hard drive.

Defendant now argues that the search by the employees at Best Buy was a government search requiring a warrant or an exception to the warrant requirement, and moves to suppress all evidence derived from the search.  Because the search by private employees at Best Buy was not under the direction of or at the request of any law enforcement entity, it was a private search to which the warrant requirement of the Fourth Amendment does not apply.  As such, there was no illegal search at Best Buy and defendant's motion should be denied.

**II.   STATEMENT OF FACTS**

Best Buy's Geek Squad computer repair and data recovery facility located at 345 International Boulevard in Brooks, Kentucky receives many computers from outside Kentucky for repair and data recovery. (Riley Decl. ¶ 8.)[1]  The Brooks location is within the Louisville Field Division of the FBI, which is frequently notified when technicians at the Brooks, Kentucky Geek Squad come across child

---

[1] Concurrently filed with this motion as separate documents are declarations from Tracey Riley and Justin Meade.  Each of these declarations is referred to herein by the person's last name followed by the relevant paragraph.

pornography on computers submitted to them for data recovery and computer repair. (Id.)

John P. Westphal, also known as "Trey Westphal" ("Westphal"), was a technician at the Best Buy Geek Squad in Brooks, Kentucky in late 2011 and early 2012. (Meade Decl. ¶ 8.) On or about December 20, 2011, while performing a data review of a hard drive submitted to the Geek Squad for data recovery repair pursuant to a service order, Westphal came across some images on the hard drive that he felt needed to be reviewed due to what appeared to him to be inappropriate content. (Riley Decl. ¶ 2; Meade Decl. Ex. 3.)

Justin Meade ("Meade") was an Assistant Manager of the Parts Department at the Best Buy Geek Squad in Brooks, Kentucky in January 2012. (Meade Decl. ¶ 2.) Prior to his employment in that position, he was a Supervisor in data recovery from approximately 2007 to 2011 at the same location. (Id.) Part of his primary responsibility as a Supervisor was to report to law enforcement when evidence of a crime was located during work by a technician. (Id. at ¶ 3.) When a technician came across evidence of a crime, such as child pornography, the technician would notify Meade, who would secure the product in the facility so no one else had access to it, and determine whether to contact law enforcement. (Id. at ¶ 4.) Over time, starting in approximately 2007 or 2008, Meade became a liaison to the FBI, in that he would contact the FBI when technicians found evidence of child pornography during the course of the technician's duties. (Id. at ¶ 5.)

The service order Westphal was executing says "client approved DRD service." (Meade Decl. Ex. 1.) This means that Rettenmaier approved recovery of data from his hard drive. (Meade Decl. ¶ 10.)

Best Buy/Geek Squad records of the work on Rettenmaier's hard drive indicate that technicians performed data recovery service. (Meade Decl. ¶ 11.) Westphal's notes describing the work he performed on Rettenmaier's hard drive "describe[] a typical process that a technician at Best Buy Buy/Geek Squad would undertake in order to carry out the data recovery service order." (Meade Decl. ¶ 12.) The process described was a part of Wesphal's job duties at Best Buy Buy/Geek Squad. (Meade Decl. ¶ 12.) The "data review" mentioned in Westphal's notes is a process undertaken by the technician to determine the viability of the files that have been recovered. (Meade Decl. ¶ 12.) "Client mission criticals" are the files and folders that the client has indicated are most important to them. (Meade Decl. ¶ 12.) Client mission criticals for data recovery service at Best Buy/Geek Squad are typically provided to Best Buy by the client. (Meade Decl. ¶ 12.) Based on his training and experience at Best Buy/Geek Squad, Justin Meade interprets Westphal's notes to mean that Rettenmaier identified pictures and videos as "client mission criticals"; in other words, Rettenmaier directed Best Buy/Geek Squad to recover lost pictures and videos from the hard drive. (Meade Decl. ¶ 12.)

On January 5, 2012, Special Agent Tracey L. Riley ("SA Riley") of the Louisville, Kentucky Division of the FBI, was contacted and informed by Meade that the Geek Squad had received a hard drive for data recovery repair that contained suspected images of child pornography. (Riley Decl. ¶ 2.) The hard drive had been submitted for data recovery repair by the defendant in this case, Mark Rettenmaier ("defendant"). (Id.) On January 6, 2012, SA Riley visited the Geek Squad and reviewed what Meade informed her were the

3

images that the technician, Westphal, had viewed on defendant's hard drive. (Id. at ¶ 3.) SA Riley reviewed the images presented to her by Best Buy employees and observed what she believed to be child pornography, and seized the hard drive. (Id.)

SA Riley never directed anyone at Best Buy to look for child pornography on defendant's hard drive or on any other hard drive or computer being repaired at the Best Buy computer repair and data recovery center. (Id. at ¶ 11.) SA Riley never designated Westphal as a cooperating human source and, to the best of her knowledge, neither did any other FBI agent. (Id.)

Meade was never asked by anyone at the FBI or any other law enforcement agency to search for child pornography or evidence of any other crime at any time. (Meade Decl. ¶ 6.) He never directed his subordinates at the Geek Squad to search for child pornography or evidence of any other crime at any time. (Id.) He never agreed to search for evidence of child pornography or evidence of any other crime on behalf of the FBI or any other law enforcement agency, and never directed his subordinates at the Geek Squad to do so at any time. (Id.) Meade's intent in reviewing any child pornography and in notifying law enforcement was only to comply with his duties as an employee of Best Buy, and was not motivated by any independent desire to assist law enforcement. (Id.)

Meade had been opened as a confidential human source, or "CHS," in 2009 by a Special Agent Jennifer Cardwell at the FBI. (Riley Decl. ¶ 10.) He was not a typical CHS in the sense that his identity did not warrant confidential handling and he was never asked by the FBI to assist in an investigation on behalf of the FBI. (Id.) In November 2012, Meade was closed as a CHS because he moved to another

4

position within Best Buy. (Id.) In October 2011, the FBI paid Meade $500 for his work as a CHS. (Id.) To the best of SA Riley's knowledge, that was the one and only payment from the FBI that Meade received in connection with his status as a CHS. (Id.)

## III. ARGUMENT

### A. LEGAL STANDARD

The Supreme Court has "consistently construed [the Fourth Amendment's] protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113-114 (1984); see also United States v. Reed, 15 F.3d 928, 930-31 (9th Cir. 1994) ("The "Fourth Amendment generally does not protect against unreasonable intrusions by private individuals.").

In determining whether a private party's search implicates the Fourth Amendment, the Court considers: "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends." Reed, 15 F.3d at 931 (internal quotation marks omitted).

"The defendant has the burden of showing government action." Id. (citing United States v. Gumerlock, 590 F.2d 794 (9th Cir. 1979) (en banc)).

B.  TREY WESTPHAL DID NOT ACT AS A GOVERNMENT AGENT WHEN HE INADVERTENTLY DISCOVERED CHILD PORNOGRAPHY ON RETTENMAIER'S HARD DRIVE

Rettenmaier does not contend that the government participated in Westphal's search of his computer. Nor could he, given that there isn't a shred of evidence to suggest that this occurred. Instead, Rettenmaier asserts that Westphal searched Rettenmaier's hard drive on behalf of law enforcement. Under the two-factor test laid out in Reed, however, Westphal's inadvertent discovery of child pornography on the hard drive was not a governmental search.

Courts routinely find that computer repair technicians who find child pornography in the course of repairing a computer are not government agents. See United States v. Grimes, 244 F.3d 375, 383 (5th Cir. 2001); United States v. Hall, 142 F.3d 988, 993 (7th Cir. 1998); United States v. Peterson, 294 F.Supp.2d 797, 804-05 (D.S.C. 2003); United States v. Meister, 596 Fed. Appx. 790, 792-93 (11th Cir. 2015); see also United States v. Tosti, 733 F.3d 816, 821-22 (9th Cir. 2013) (considering similar situation under apparent assumption that computer store employees in course of repairing computer are not government agents). Where a technician is performing a repair on a computer and stumbles across images of child pornography, the government naturally neither knew of nor acquiesced in the search, and the technician is clearly not performing the search with the intent of assisting law enforcement efforts.

That was certainly the case here. Defendant has submitted no evidence that the FBI knew of or acquiesced in Westphal's search of Rettenmaier's hard drive. Indeed, the facts all point the other way. Westphal never contacted the FBI about his discovery but instead

6

reported it up the chain of command to his supervisor, Justin Meade. (Meade Decl. ¶ 4, 8, 14; Riley Decl. ¶ 2, 3.)  SA Riley does not recall having any contact with Westphal at any point during this investigation.  (Riley Decl. ¶ 11.)  Meade did not contact the FBI until more than two weeks after Westphal made his discovery.  (Def. Exs. 1 & 15.)  This significant delay in reporting the incident to the FBI negates any possibility that the FBI either had prior knowledge of and acquiesced in the search or actually participated in it.  As in Hall, "the Government had no knowledge that [Best Buy technicians were] going to repair [defendant's] computer and thus, did not instruct [the technician] to inspect the files."  Hall, 142 F.3d at 993.  Thus, as in Hall, the search "was obviously a private search since it was not carried out by law enforcement officers, nor was it conducted under their direction; for [the technician] had not had any contact with law enforcement concerning [defendant] prior to the search."  Id. at 994; see also United States v. Sherwin, 539 F.2d 1, 6 (9th Cir. 1976) (en banc) (private search where trucking terminal manager inventorying contents of damaged carton discovered obscene material and later turned it over to FBI agents).

Rettenmaier contends that Westphal intended to assist the FBI. This argument is based on a series of suspect inferences drawn from unrelated incidents in Westphal's employment record, tendentious interpretations of statements in Best Buy's policy with respect to the discovery of suspected child pornography, and an entirely made-up story about what Rettenmaier authorized Best Buy to do with his hard drive.  The argument is pure speculation.

Westphal's Best Buy personnel file records several on-the-job incidents that ultimately resulted in Westphal's dismissal from Best

7

Buy/Geek Squad.  However, none of these incidents involved Rettenmaier's hard drive, searches for child pornography, or contact with law enforcement.  Even if, as defendant argues, Westphal had a "habit of going beyond what is required to do to fulfil[l] his obligation under his repair order" (Mot. 10), there is absolutely nothing in Westphal's personnel file to suggest that this habit involved crime detection.  Rettenmaier's portrait of Westphal as a vigilante searching for child pornography on client hard computers, even if true, would not establish governmental action.  As the Ninth Circuit has repeatedly ruled, "[a] private search in which the government is in no respect involved either directly as a participant or indirectly as an encourager is not subject to the Fourth Amendment because the private actor is motivated in whole or in part by a unilateral desire to aid in the enforcement of the law."  Gumerlock, 590 F.2d at 800; see also Sherwin, 539 F.2d at 6.

   Rettenmaier suspects that Westphal must have been working for the FBI based in part on Best Buy/Geek Squad's internal policies, which Rettenmaier describes as "designed to assist law enforcement." (Mot. 8.)  The policies clearly state that employees "should never search the content of a Client's PC" and "should only open files on a Client's PC that are necessary to perform the service listed on the service order as requested by the Client."  (See Def. Ex. 3.)  As Rettenmaier concedes, however, the policy specifically instructs its employees not to search client computers. (Mot. 5.)  The rest of the policy simply gives employees guidance about how to deal with suspected child pornography inadvertently discovered on a client computer.  Rettenmaier's claim that this policy directs employees "to detect crime and assist in prosecution" (Mot. 9) is a willful

8

misinterpretation of a policy to report suspected crime to law enforcement.[2]

Finally, Rettenmaier suspects that Westphal must have been working for the FBI because he "had no legitimate purpose in searching the unallocated space of Defendant's computer." (Mot. 9.) In support of this claim, Rettenmaier, without citing to any declaration or document, invents the story that he "indicated to [Best Buy/Geek Squad] that he did not care about the data" on his hard drive and only "wanted the computer to work." (Mot. 9.) But this story is contradicted by the evidence, which shows that Rettenmaier brought his hard drive into Best Buy/Geek Squad specifically for the purpose of data recovery service. The service order itself says "client approved DRD service." (Meade Decl. Ex. 1.) This means that Rettenmaier approved recovery of data from his hard drive. (Meade Decl. ¶ 10.) Best Buy/Geek Squad records of the work on Rettenmaier's hard drive indicate that technicians performed data recovery service. (Meade Decl. ¶ 11.) Contrary to Rettenmaier's claims, Westphal's notes describing the work he performed on Rettenmaier's hard drive "describe[] a typical process that a technician at Best Buy Buy/Geek Squad would undertake in order to carry out the data recovery service order." (Meade Decl. ¶ 12.) The process described was a part of Westphal's job duties at Best Buy Buy/Geek Squad. (Meade Decl. ¶ 12.) The "data review" mentioned in Westphal's notes is a process undertaken by the technician to

---

[2] Even if Best Buy/Geek Squad's policy could be interpreted this way, Rettenmaier waived any right to raise a Fourth Amendment claim on this basis when he signed the Service Order, which clearly states, "I am on notice that any product containing child pornography will be turned over to the authorities." (Meade Decl. Ex. 1.)

determine the viability of the files that have been recovered. (Meade Decl. ¶ 12.) "Client mission criticals" are the files and folders that the client has indicated are most important to them. (Meade Decl. ¶ 12.) Client mission criticals for data recovery service at Best Buy/Geek Squad are typically provided to Best Buy by the client. (Meade Decl. ¶ 12.) Based on his training and experience at Best Buy/Geek Squad, Justin Meade interprets Westphal's notes to mean that Rettenmaier identified pictures and videos as "client mission criticals"; in other words, Rettenmaier directed Best Buy/Geek Squad to recover lost pictures and videos from the hard drive. (Meade Decl. ¶ 12.)

C. MEADE'S PRIOR CONTACTS WITH THE FBI DID NOT CONVERT WESTPHAL'S PRIVATE SEARCH INTO A GOVERNMENT SEARCH

Rettenmaier next argues that the contacts between Best Buy/Geek Squad employee Justin Meade and FBI SA Tracey Riley rendered any search at Best Buy a governmental search requiring a warrant or an exception to the warrant requirement. This argument also fails.

The main reason that this argument fails is that Justin Meade did not discover the suspected child pornography on Rettenmaier's hard drive. Trey Westphal did. Meade only reported this fact to the FBI. Crucially, Rettenmaier has presented no evidence whatsoever that Meade directed Westphal to search for child pornography on Rettenmaier's hard drive. To the contrary, Meade denies that he ever instructed any of the technicians under his supervision to search for child pornography on computers being serviced at Best Buy/Geek Squad. (Meade Decl. ¶ 6.) Nor has Rettenmaier provided any evidence to suggest that the FBI instructed, directed, or encouraged Westphal to search client computers for the government. The evidence shows,

10

instead, that the FBI never directed Westphal or anyone at Best Buy/Geek Squad to look for child pornography on Rettenmaier's hard drive or on any other hard drive or computer being repaired at the Best Buy/Geek Squad data recovery center. (Riley Decl. ¶ 11.) Whatever the nature of Meade's relationship with the FBI may have been, the key relationship for purposes of the "private search" inquiry was Westphal's relationship with the FBI, which was no relationship at all.

Even if Meade's relationship with the FBI were relevant, however, the circumstances of that relationship do not establish government action in this case. The documents from Meade's FBI cooperating human source file submitted by Rettenmaier show nothing more than that, through the course of informing the FBI when Best Buy/Geek Squad technicians discovered suspected child pornography, Meade became Best Buy/Geek Squad's informal liaison with the FBI. (Meade Decl. ¶¶ 5, 14; Riley Decl. ¶ 9.) This alone does not create an agency relationship.

Although Rettenmaier does not mention this fact in his Motion, it appears that Meade was paid $500 by the FBI in October 2011, approximately two months before Westphal discovered the suspected child pornography on Rettenmaier's hard drive. (Riley Decl. ¶ 10.) This fact changes nothing. "[C]ourts must look to all the facts to determine whether a paid government informant may fairly be said to be a government actor, because he has acted together with or has obtained significant aid from government officials, or because his conduct is otherwise chargeable to the State." Ghandi v. Police Dept. of City of Detroit, 823 F.2d 959, 963 (6th Cir. 1987) (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937 (1982)). The crucial

11

fact here is that the government never directed Best Buy/Geek Squad employees to search for child pornography.  Even searches by individuals designated by law enforcement as confidential informants have been commonly found not to be governmental action, where, as here, the government did not direct the search in any way and thus did not know about or acquiesce in the search.  See, e.g., United States v. Malbrough, 922 F.2d 458, 462-63 (8th Cir. 1990) (informant's entry onto defendant's property not governmental action because no evidence existed that the police asked him to enter the property or even knew about it until after it occurred); United States v. Barth, 26 F.Supp.2d 929, 935-36 (W.D. Tex. 1998) (computer technician was not government actor for Fourth Amendment purposes when he came across child pornography while reviewing files stored in hard drive of computer, even though he was confidential informant for FBI in addition to his computer job, where technician was working to repair the computer).

United States v. Walther, 652 F.2d 788 (9th Cir. 1981), is distinguishable and does not control the outcome here.  In that case, Rivard, an airlines baggage terminal employee, opened an overnight case that he suspected contained illegal drugs.  Id. at 790.  When his suspicions turned out to be true, he reported that fact to the DEA.  Walther, the case's owner, was later charged with a drug trafficking offense and moved to suppress the evidence as the fruit of an illegal search.  Id. at 790.  At the suppression hearing, Rivard testified that he did not expect to be paid for opening the case.  Id.  But the district court found otherwise based on the fact that (1) Rivard was not carrying out a business purpose of his employer, his sole reason being his suspicion that the case contained

illegal drugs, and (2) before opening Walther's case, Rivard had, on at least eleven other occasions, provided information to the DEA for payments ranging from $25 to $250. Id. at 791. The Ninth Circuit affirmed the district court's findings, holding that (1) the absence of a legitimate business reason for opening the case and Rivard's expectation of receiving payment from the DEA established that he had conducted the search with the requisite mental state of a government agent; and (2) Rivard's prior experience with the DEA provided proof of the government's acquiescence in the search of Walther's luggage. Id. at 792-93. However, Walther emphasized the "narrowness" of its holding:

> It is dependent upon the trial court's finding of extensive contact between Rivard and the DEA and its finding on Rivard's motivation for opening the overnight case. The DEA either knew or should have known that Rivard had made it a practice to inspect Speed Paks, and had acquiesced in that practice.

Id. at 793.

Whereas in Walther Rivard was the person who searched Walther's case, here Meade did not search Rettenmaier's hard drive but merely reported the fact that suspected child pornography had been discovered on it to the FBI. While Rivard had no legitimate business reason for searching Walther's case and expected to receive payment for finding drugs there, it was Best Buy/Geek Squad's policy to alert law enforcement if its technicians discovered child pornography on a client's computer and Meade informed the FBI about Westphal's discovery with the intent of carrying out this policy (Def. Ex. 3),

13

not for the purpose or with the expectation of receiving payment for that information (Meade Decl. ¶ 6, 7).

Indeed, this case is more like United States v. Valen, 479 F.2d 467 (3d Cir. 1973), where the Third Circuit found no government action even though the private party who conducted the search had been previously paid by the government for doing something similar. Id. at 469. In that case, Thompson, an employee at a private freight company, reported to a U.S. Customs agent that he smelled marijuana in Valen's suitcases. Id. Customs officials searched the baggage and found marijuana. Id. After Valens was charged with drug trafficking offenses, he moved to suppress marijuana, arguing that Thompson was a government agent. Id. At the suppression hearing, Thompson testified that on at least one previous occasion he had supplied Customs agents with similar information, for which he had been paid $375, and had also been told by a Customs agents to notify them "if he came across anything suspicious in the future." Id. Even so, the Third Circuit found that "the minimal contacts between Thompson and the government do not make out a prima facie case of government participation in Thompson's search. . . . Thompson was requested to do no more than report suspicious parcels; no attempt was made by the government to use him to do that which the agents themselves were forbidden to do." Id. at 469.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.